Andre R. Desir, Esq.
Bar ID 331388
Andre@vexillumlaw.com
917-717-0157
7373 ridge ave, 330 Philly PA 19128

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSLYVANIA

-------------------------------X

First United Methodist Church at Media a/k/a    :       Civ.

First Church Media

                Plaintiff,     :

           v.          :

Media Food Bank &          :

Paul Mickle

             Defendants.   :

-------------------------------X

## PAUL MICKLE & MEDIA FOOD BANKS NOTICE OF REMOVAL

**PLEASE TAKE NOTICE THAT**:

Pursuant to 28 U.S.C. § 1441(c)(1)(a), 28 U.S.C. § 1454, 28 U.S.C. § 1338, Paul Mickle & Media Food Bank ("Defendant") hereby removes this action from the Court of Common Pleas of Delaware County, Pennsylvania, to the United States District Court for the Eastern District of Pennsylvania. In support of this Notice of Removal, Defendant avers as follows:

### Procedural History and Plaintiff's Allegations

1. On February 8, 2024, First United Methodist Church of Media ("Plaintiff") emailed Defendant a Cease and Desist letter, giving Defendant four days to comply with the terms, namely halting the use of the name "Media Food Bank" or face a lawsuit.  A true and correct copy of the Cease and Desist is attached as Exhibit 1.

2.   On February 23, 2024, Plaintiff commenced a civil action against Defendant when they filed a Complaint against Defendant with Four (4) Causes of Action. A true and correct copy of the Complaint is attached as Exhibit 2.

3.   Plaintiff's Complaint alleged: Count 1, Unfair Competition; Count II, Tortious Interference with Contractual Relations; Count III Aiding and Abetting Breach of Fiduciary Duty; and Count IV Civil Conspiracy.

4.   On February 29, 2024, Plaintiff filed an Emergency Petition for Preliminary Injunction, alleging irreparable harm and loss if Defendant did not turn over a Facebook Account, and for Defendant to "stop impersonating [Plaintiff] to donors and volunteers." A true and correct copy of the Emergency Injunction is attached as Exhibit 3.

5.   On March 4, 2024, a Notice of Hearing was sent to Defendant by the Hon. John J. Whelan, wherein Judge Whelan granted the request for an Emergency Hearing and set a hearing date for March 15, 2024 in Courtroom 8, Delaware County Courthouse, 201 W. Front Street Media Pa. A true and correct copy of the Notice of Hearing is attached as Exhibit 4.

6.   On March 7, 2024, Undersigned Counsel entered his appearance in the above captioned matter.

7.   On March 14, 2024, Plaintiff filed a return of Sheriff Service, indicating that the Complaint was delivered to an adult at the residence of Paul Mickle on March 5, 2024.

8.   On March 14, 2024, Defendant filed Preliminary Objections to the Petition for Emergency Injunction, which were not docketed until March 15, 2024.

9.  On March 15, 2024, Plaintiff, represented by Darryl Shorter, Esq., Defendant represented by undersigned counsel, and the Attorney General of Pennsylvania, represented by Lisa Rhodes, Esq. were present in Courtroom 8 at 10:30 am for the hearing.

10. At the outset of the Hearing Judge Whelan allowed Oral Argument on the Preliminary Objection, at the conclusion of which Judge Whelan overruled the Objections allowing the matter to proceed to a hearing.

11.  After the Hearing in which Plaintiff and Defendant called witnesses and introduced evidence, Judge Whelan issued his ruling and findings from the Bench, finding that Plaintiff had carried their burden for the issuance of a Preliminary Injunction, and found for Plaintiff.

12. Judge Whelan instructed Counsel to jointly draft an Order in alignment with his findings that would be jointly submitted to chambers.

13. On March 20, 2024, Counsel individually submitted to Chambers their draft Orders.

14. On March 20, 2024, Judge Whelan issued a Preliminary Injunction, enjoining Defendant from using the name Media Food Bank, Ordering Defendant to delete the Facebook page "Media Food Bank" to turn over to Plaintiff's counsel the administrative login information, etc. A true and correct copy of Judge Whelan's Order is attached as Exhibit 5.

15. On March 21, 2024 Defendant filed a Petition for Reconsideration, requesting that Judge Whelan reconsider the issuance of a preliminary injunction. A true and correct copy of the Petition for Reconsideration is attached as Exhibit 6.

16. On April 8, 2024, Plaintiff, *sua sponte* filed an Amended Complaint.

### This Court has Jurisdiction Pursuant to 28 U.S.C. §§ 1441, 1331, 1454, and 1338

1. Section 1441(c) of Title 28, United States Code, states that a Defendant may remove from State Court any civil action where the District Courts have Original Jurisdiction to the District Court embracing the place where such action is pending. 28 U.S.C. § 1441(a)

2. Section 1331 of Title 28, United States Code, states that the District Courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331.

3. Section 1367(a) of Title 28, United States Code, states that a District Court that has Original Jurisdiction shall have supplemental jurisdiction over all other claims that are so related to claims that they form the same case or controversy under Article III of the United States Constitution.

4. Count I, II, III, and IV, of Plaintiff's Complaint are textbook Trademark infringement claims generally governed under 15 U.S.C. §1121.

5. This Court has original jurisdiction over Plaintiff's unfair competition claim that raises substantial trademark questions regarding ownership and usage of "Media Food bank" under the Lantham Act, 15 U.S.C. §§ 1051 et seq.

6. This Court has original jurisdiction over any unfair competition claim as it related to the use of trademarks and any confusion in the marketplace of trademarks as plead by Plaintiff.

7. This Court has supplemental jurisdiction over any miscellaneous state law claims because they all stem from the alleged trademark infringement and are so related that they form part of one controversy: who own's "Media Food Bank."

8. Alternatively, Plaintiffs raise novel questions of federal law and ownership of a Facebook Account such that Federal Question jurisdiction is warranted.[1]

9. Venue is proper the Eastern District of Pennsylvania, as this Court is the Jurisdiction that embraces the Court of Common Pleas of Delaware County, Pennsylvania, wherein the underlying matter is currently lodged.

10. This Notice of Removal has been filed within 30 days after the receipt by Defendants, through service or otherwise, of a copy of the Complaint, pursuant to 28 U.S.C. § 1446(b).

11. Defendants consent jointly to this Removal from State Court to Federal Court.

12. Defendant received a copy of the Complaint on March 9, 2024, and the instant filing of the Notice of Removal is on or before April 9, 2024.

13. Pursuant to 42 U.S.C. § 1446(d), Defendants are, on this date, filing a Notice of Removal notice that will be served upon Plaintiffs and the Prothonotary of the Delaware County Court of Common Pleas. A copy of the Notice is attached hereto as Exhibit 6.

14. Defendants specifically reserve and, by the filing of this Notice of Removal, do not waive applicable defenses to Plaintiff's Complaint. The filing of this Notice does not represent acknowledgment of the validity of any claims made by Plaintiffs.

---

[1] JLM Couture, Inc. v. Gutman, 91 F.4th 91, 102 (2d Cir. 2024), wherein our sister circuit identifies that "determining ownership of social-media accounts is indeed a relatively novel exercise."

15. True and correct copies of all process, pleadings, and orders served on the defendants in

the action pending in state court art attached hereto.


**WHEREFORE**, Defendants, Paul Mickle, and Media Food Bank respectfully request that the

action presently pending in The Court of Common Pleas of Delaware County be removed to the

United States Court for the Eastern District of Pennsylvania.




Dated: April 9, 2024


Respectfully submitted,

By: /s/ Andre Desir

Andre Richard Desir, Esq

BAR ID 331388

Vexillum Law

7373 Ridge ave 330, Philly PA 19128

917-717-0157

Andre@vexillumlaw.com

Attorney for Defendants

**EXHIBIT**

**ROBERT C. KELLER**
**SCOTT A. LISGAR**
**VALERIE K. WILLIAMS\*\***
**DARRYL W. SHORTER\*+**
**ANNEMARIE E. WARD**
**STEVEN R. KOENSE**

*\*Also admitted to N.C. Bar*
*+Also admitted to Patent Bar*
*\*\*Admitted to N.J. Bar*

*Please address all mail to our*
*Havertown office*

# KELLER, LISGAR & WILLIAMS, LLP
## ATTORNEYS AT LAW
www.klwllp.com
_____

**101 EAST DARBY ROAD**
**HAVERTOWN, PA  19083**

**Phone (610) 449-1400**
**Fax (610) 449-4460**
**Email: dshorter@klwllp.com**

**MEDIA OFFICE**
8 West Front Street
Media, PA 19063
Phone (610) 892-0400

**BUCKS COUNTY OFFICE**
95 Almshouse Road
Suite 202
Richboro, PA 18954
Phone (215) 364-2062

**PHILADELPHIA OFFICE**
1515 Market Street
Suite 1200
Philadelphia, PA 19102
Phone (215) 739-6465

February 8, 2024

***VIA EMAIL: freilly@mcneeslaw.com***

McNees Wallace & Nurick, LLC
Frannie Reilly, Esquire
426 W. Lancaster Ave.
Suite 110
Devon, PA 19333

      **RE:**    **MEDIA FOOD BANK**

Frannie,

      As you know, this Firm has been retained by First United Methodist Church of Media regarding the above-referenced matter.

      For nearly 30 years, the Media Food Bank has been, and continues to be, operated by First United Methodist Church of Media (hereinafter "First Church"). The Media Food Bank was founded in 1995 as a ministry of First Church with the mission of service to Delaware County individuals and families to help address food insecurity. In accordance with this mission, The Media Food Bank distributes to individuals and families of Delaware County. This mission has been uninterrupted since 1995 and has generated numerous donations from the community and businesses.

      On or about December 6, 2023, your clients created a separate nonprofit corporation named MEDIA FOOD BANK. Your client's creation of this corporation was seemingly done for the sole purpose of damaging the good work that is being performed in the community by First Church. This new corporation has misappropriated the name, donor list, supplier list, and Facebook page, and is using the goodwill and reputation of the First Church Media Food Bank to divert monetary and food donations away from First Church. Your client, through the Media Food Bank Facebook page, has even suggested that the First Church authorized the creation of the new corporation and is, therefore, no longer operating its food bank. The actions of your client have caused serious harm to the First Church' Media Food Bank's reputation, the community, and the individuals and families that rely on the service First Church is providing.

Accordingly, First Church demands that Media Food Bank cease and desist from using the name Media Food Bank for any reason, return control of the Media Food Bank Facebook page to First Church, and provide a detailed accounting of the donations that have been received by Media Food Bank, including from whom the donation was received.

It is hard to imagine a legitimate reason for your client to register a food bank with the same name used by First Church. The food bank ministry of First Church and its mission is a core service of the church. As such First Church is prepared to take all action under the law to protect the community and the service it has provided for almost 30 years.

Please confirm by Monday, February 12, 2024 that your client has complied with the terms of this cease and desist letter.

Should you have any questions, please contact me.

Very truly yours,

Darryl W. Shorter

DWS/kk:Cease and Desist ltr

CC:  First Church of Media

## IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA

### COVER SHEET - NOTICE OF FILING OF MOTION OR PETITION UNDER
### LOCAL RULES OF CIVIL PROCEDURE

CASE CAPTION: First United Methodist Church of Media a/k/a First Church Media v. Media Food Bank and Paul Mickle   CIVIL CASE NO. CV 2024-001795

NATURE OF MATTER FILED: (*please check one*)

[✔] Petition Pursuant to Rule 206.1          [ ] Response to Petition          [ ] Motion for Judgment on the Pleadings Pursuant to Rule 1034(a)

[ ] Motion Pursuant to Rule 208.1          [ ] Response to Motion          [ ] Summary Judgment Pursuant to Rule 1035.2

[ ] Family Law Petition/Motion Pursuant to Rule 206.8

## FILING PARTY IS RESPONSIBLE FOR SERVICE OF THE RULE RETURNABLE DATE OR HEARING DATE UPON ALL PARTIES

A motion or petition was filed in the above captioned matter on the 29 day of February, 2024, which:

[ ] Requires you, Respondent, to file an Answer within twenty (20) days of the above date to this notice, or risk the entry of an Order in favor of the Petitioner. Answers must be filed and time stamped by the Office of Judicial Support by 4:30 PM on the following date _____ _____, _____.

[✔] Requires all parties, to appear at a hearing/conference on the ____ day of _____, _____, at _____ in Courtroom _____, Delaware County Courthouse, Media, Pennsylvania. At this hearing/conference you must be prepared to present all testimony and/or argument, and must ensure that your witnesses will be present.

[ ] Was timely answered, thus requiring the scheduling of the following hearing in the above captioned matter on: _____ _____, _____ at 10:00 AM in Courtroom _____.

At this hearing, all parties must be prepared to present all testimony and/or argument and **must ensure that their witnesses will be present.**

[ ] Qualifies as an Uncontested Motion or Petition, and as such requires neither an answer from the Respondent nor the scheduling of a hearing in this matter.

[ ] Has been assigned to Judge _____.

### FOR OFFICE USE ONLY

Mailing date: _____          Processed by: _____

**KELLER, LISGAR & WILLIAMS, LLP**
**DARRYL W. SHORTER, ESQUIRE**
Attorney I.D. No. 87554
101 E. Darby Road
Havertown, PA 19083
(610) 449-1400
dshorter@klwllp.com                                    ATTORNEY FOR PLAINTIFF

| | |
|---|---|
| FIRST UNITED METHODIST CHURCH | : COURT OF COMMON PLEAS |
| OF MEDIA a/k/a FIRST CHURCH MEDIA | : OF DELAWARE COUNTY |
| Plaintiff, | : CIVIL DIVISON – LAW |
| | : |
| vs. | : NO. CV-2024-001795 |
| | : |
| MEDIA FOOD BANK | : |
| and PAUL MICKLE | : |
| Defendants. | : |

## RULE TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE

Upon consideration of Plaintiff, First United Methodist Church of Media, a/k/a First

Church Media's Complaint and the Emergency Petition for Preliminary Injunction (the "Petition"):

**IT IS ORDERED** that Defendants, Media Food Bank and Paul Mickle show cause before

this Court on the _____ day of _____, 2024 at _____ a.m/p.m. in Courtroom _____,

or as soon thereafter as counsel can be heard, why a Preliminary Injunction providing the relief

sought in the accompanying Petition should not be entered;

**IT IS FURTHER ORDERED** that the parties shall have _____ days from the date of

this order to conduct discovery on factual issues related to the Petition;

**IT IS FURTHER ORDERED** that the Plaintiff shall cause a copy of this Rule, along with

a copy of the Complaint, Petition, and accompanying papers, to be served upon Defendants

within _____ days.

BY THE COURT:

_____
                                                                    J.

**KELLER, LISGAR & WILLIAMS, LLP**
**DARRYL W. SHORTER, ESQUIRE**
Attorney I.D. No. 87554
101 E. Darby Road
Havertown, PA 19083
(610) 449-1400
dshorter@klwllp.com                          ATTORNEY FOR PLAINTIFF

| | |
|---|---|
| FIRST UNITED METHODIST CHURCH | : COURT OF COMMON PLEAS |
| OF MEDIA a/k/a FIRST CHURCH MEDIA | : OF DELAWARE COUNTY |
| Plaintiff, | : CIVIL DIVISON – LAW |
| | : |
| vs. | : NO. CV-2024-001795 |
| | : |
| | : |
| MEDIA FOOD BANK | : |
| and PAUL MICKLE | : |
| Defendants. | : |

## ORDER

AND NOW, this         day of               2024, upon consideration of the Plaintiff's Emergency Petition for Preliminary Injunction (the "Petition"), and the accompanying papers in support thereof, having determined:

1.      Plaintiff will suffer irreparable harm and loss if Defendants do not (1) turn over control of Plaintiff's accounts including Facebook: Media Food Bank and does not stop impersonating Plaintiff to donors and volunteers;

2.      Restoring Plaintiff's access to, and control over, the foregoing accounts and websites will retain the Status quo;

3.      Plaintiff does not have an adequate remedy at law; and

4.      Greater injury will be inflicted upon Plaintiff by denial of injunctive relief, than would be inflicted upon the Defendant by the granting of such Relief;

It is therefore **ORDERED, ADJUDGED** and **DECREED** as follows:

1.      Defendant is hereby directed to turn over control of Plaintiff's accounts including Facebook, and to cease using the Media Food Bank name when speaking with volunteers and donors.

2.      A hearing on the Petition shall take place as set forth in the Rule to Show Cause entered in conjunction with this Order.  This injunction shall Continue in effect until further Order of this Court.

BY THE COURT:

_____
                                                        J.

KELLER, LISGAR & WILLIAMS, LLP
By: DARRYL W. SHORTER, ESQUIRE
Attorney I.D. 87554
101 East Darby Road
Havertown, PA 19083
(610) 449-1400                                          Attorney for Plaintiff

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CIVIL ACTION- EQUITY

|                                          |   |                          |
|------------------------------------------|---|--------------------------|
| FIRST UNITED METHODIST CHURCH            | : |                          |
| OF MEDIA a/k/a FIRST CHURCH MEDIA        | : |                          |
|     Plaintiff        | : |                          |
|                                          | : |                          |
|     v.               | : | NO: NO. CV-2024-001795   |
|                                          | : |                          |
| MEDIA FOOD BANK                          | : |                          |
| and PAUL MICKLE                          | : |                          |
|     Defendant        | : |                          |

## EMERGENCY PETITION FOR PRELIMINARY INJUNCTION

Petitioner, First United Methodist Church of Media, by and through its attorneys,

KELLER, LISGAR & WILLIAMS, LLP, moves pursuant to Rule 1531(a) of the Pennsylvania

Rules of civil Procedure for a Preliminary Injunction, directing Defendants to turn over control

of Plaintiff's accounts including the Media Food Bank Facebook page, and further directing that

Defendants cease using the goodwill of Plaintiff's to create confusion with donors, and avers as

follows:

## PRELIMINARY STATEMENT

1.      As set forth in Plaintiff's Complaint, a copy of which is attached and incorporated

herein as EXHIBIT "A", Plaintiff has operated a food bank as one of its ministries under the

name MEDIA FOOD BANK for more than twenty-eight (28) years, located in the lower level of

Plaintiff's church at 350 West State Street, Media, PA 19063.

2.      Plaintiff has earned very good reputation and developed a lot of goodwill in the community as a result of the community service performed by Plaintiff's church members and volunteers/

3.      Specifically, the Media Food Bank run by Plaintiff has grown since its inception in or around 1995 and assisted tens of thousands of families with food insecurity.

4.      Defendant, Paul Mickle, was a longtime volunteer at Plaintiff's Media Food Bank and very involved in its operation.

5.      In July 2023, upon request of Defendant Mickle, Defendant Paul Mickle was employed on a part time basis as the Director of Plaintiff's Media Food Bank.

6.      While affiliated with Plaintiff, Paul Mickle set up the following electronic social media account for Plaintiff, Facebook : Media Food Bank, and the telephone number 484-442-0033.

7.      Additionally, Plaintiff's Media Food Bank has utilized the web address, which was registered by Defendant Paul Mickle while he was a volunteer and employed by Plaintiff: mediafoodbank.org.

8.      While Defendant Paul Mickle was affiliated with Plaintiff's Media Food Bank, he had access to all of the Media Food Bank data including, but not limited to, individual donor contact information, volunteer contact information, and corporate donor information.

9.      Defendant Paul Mickle resigned from his position as director of Plaintiff's Media Food Bank after Plaintiff approached him about his knowledge regarding the registration of a separate non-profit named Media Food Bank.

10.     Unbeknownst to Plaintiff, Defendant Paul Mickle continued to volunteer at Plaintiff's Media Food Bank while being the President of Defendant Media Food Bank.

**DEFENDANT'S UNFAIR COMPETITION AND TRADEMARK INFRINGEMENT**

11.     Defendant Media Food Bank was formed on or about December 11, 2023, with Defendant Paul Mickle filing a Statement with the Pennsylvania Department of State as President on December 12, 2023.

12.     Upon Plaintiff's information and belief, Defendants began conspiring in late 2023 to unfairly and improperly usurp and redirect existing and potential volunteers, donors, and corporate donors from Plaintiff to Defendants seemingly for the purpose of eliminating Plaintiff's Media Food Bank. In particular, Plaintiff has discovered the following, without limitation:

      a.     In or about January 18, 2024 Defendants went to the normal location in which Plaintiff picks up donations from one of Plaintiff's large corporate food donors and attempted to pick up the donations identifying themselves as Plaintiff. When finding out that the donations had already been picked up by Plaintiff, Defendants created concern with the corporate donor causing the corporate donor to cease providing food donations to Plaintiff;

      b.     On or about January 18, 2024, Defendants changed the login information and corporate information associated with Plaintiff's Media Food Bank in the SHARE database to the corporate information of Defendant;

      c.     At least as early as November 2023, Defendant Paul Mickle began working with others to start talking to volunteers and donors of Plaintiff's Media Food Bank in order to determine who would leave Plaintiff's food bank and work with Defendants.

d.   Upon information and belief, Defendants attempted to usurp the relationship Plaintiff's have with other corporate donors by impersonating Plaintiff or acting as if Defendant was associated with Plaintiff.

e.   Defendant have commandeered Plaintiff's Facebook page, Media Food Bank, and created the impression that Defendant was the food bank that was located at Plaintiff's Church, but moved on with the permission of Plaintiff. See Exhibit B of Plaintiff's Complaint.

f.   Defendants have created a campaign of confusion and misinformation with the purpose of negatively affecting Plaintiff's Media Food Bank.

13.   This Court has personal jurisdiction over the parties to this matter and over the subject matter.

## ENTITLEMENT TO INJUNCTIVE RELIEF

14.   Preliminary injunctive relief is appropriate where six elements are satisfied: (1) The injunction is necessary to prevent immediate and irreparable harm that cannot be compensated adequately by damages; (2) Greater injury would result from refusing the injunction than from granting it, and, concomitantly, the issuance of an ijnuction will not substantially harm other interested parties in the proceedings; (3) The preliminary injunction will properly restore the parties to their status as it existed immediately orperto the alleged wrongful conduct; (4) The party seeking injunctive relief has a clear right ot relief and is likely to prevail on he merits; (5) The injunction is reasonably situated to abate the offending activity; and (6) The preliminary injunction will not adversely affect the public interest. SEIU Healthcare Pa. v. Commonwealth, 104 A.3d 495, 501-02 (PA. 2014).

15.     Each of these elements compels that injunctive relief be entered in favor of Plaintiff.

16.     First, an injunction is necessary to prevent immediate and irreparable harm that cannot be compensated adequately by money damages, in that Plaintiff's electronic information, social media accounts and websites are vital to the success of Plaintiff's Media Food Bank and its mission to assist in alleviating food insecurity.

17.     Second, greater injury would result from refusing the injunction than from granting it, and the issuance of an injunction will not substantially harm Defendants. Clearly, the social media accounts in question belong to Plaintiff and Defendants have no right to them.

18.     Third, the preliminary injunction will properly restore the status quo allowing the Court the time required to determine Plaintiff's rights and interests.

19.     Fourth, Plaintiff has right to the relief sought as the accounts and information in questions were set up for the benefit of Plaintiff utilizing Plaintiff's resources.

20.     Fifth, the injunction sought is reasonably suited to abate the offending activity in that Plaintiff merely asks that Defendant restore the status quo in terms of Plaintiff's access to its own accounts.

21.     Finaly, the injunction sought will not have any negative impact on the public interest. The public will not be impacted by the maintenance of the status quo between the parties to this action.

## RELIEF SOUGHT

Plaintiff seeks a preliminary injunction granting the following relief:

(1) Directing Defendants to turn over control of Plaintiff's accounts including Facebook: Media Food Bank; and

(2) Directing Defendants to cease using the Media Food Bank name;

(3) Directing Defendants to cease contacting donors and volunteers using the volunteer and donor information misappropriated from Plaintiff;

(4) Directing Defendant to make clear in the market that its non-profit is not affiliated with Plaintiff's Media Food Bank that has been operating the food bank for more than twenty-eight years; and

(5) Directing Defendant to cease impersonating Plaintiff with volunteers, donors and corporate donors.

**KELLER, LISGAR & WILLIAMS, LLP**

DATED:   02/29/2024              BY:      /s/ Darryl W. Shorter
                                         **DARRYL W. SHORTER, ESQUIRE**
                                         **Attorney for Plaintiff**

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania, Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

**KELLER, LISGAR & WILLIAMS, LLP**

**DATED:**  02/29/2024          **BY:**      /s/ *Darryl W. Shorter*
                                            **DARRYL W. SHORTER, ESQUIRE**
                                            **Attorney for Plaintiff**

## IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
## CIVIL ACTION- EQUITY

FIRST UNITED METHODIST CHURCH         :
OF MEDIA a/k/a FIRST CHURCH MEDIA     :
      Plaintiff                             :
                          :
        v.                                :
                          : NO: CV-2024-001795
                          :
MEDIA FOOD BANK                       :
and PAUL MICKLE                       :
      Defendant                         :

### NOTICE TO DEFEND

      **YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and notice are served, by entering a written appearance personally or by an attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.**

      YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH THE INFORMATION ABOUT HIRING A LAWYER.

      IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH THE INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

**LAWYERS' REFERENCE SERVICE**
**Front & Lemon Streets**
**Media, PA  19063**
**(610) 566-6625**

KELLER, LISGAR & WILLIAMS, LLP
By: DARRYL W. SHORTER, ESQUIRE
Attorney I.D. 87554
101 East Darby Road
Havertown, PA 19083
(610) 449-1400                                    Attorney for Plaintiff

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CIVIL ACTION- EQUITY

FIRST UNITED METHODIST CHURCH    :
OF MEDIA a/k/a FIRST CHURCH MEDIA :
        Plaintiff          :
                     :
                     :
        *v.*                :NO:
                     :
MEDIA FOOD BANK                  :
and PAUL MICKLE                  :
        Defendant          :

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, First United Methodist Church of Media, by and through its attorneys,

KELLER, LISGAR & WILLIAMS, LLP, and avers as follows:

## PARTIES

1.      Plaintiff, FIRST UNITED METHODIST CHURCH OF MEDIA a/k/a FIRST

CHURCH MEDIA), is a Pennsylvania non-profit organization having a place of business located

at 350 West State Street, Media, PA 19063.

2.      Defendant, MEDIA FOOD BANK, INC., is a Pennsylvania non-profit

corporation having an address listed as P.O. box 1634, Media, PA 19063.

3.      On information and belief, Defendant, PAUL MICKLE, is an adult individual

having a residence located at 581 Farnum Road, Media, PA 19063.

## JURISDICTION AND VENUE

4.      This Court has personal jurisdiction over the parties to this matter and over the

subject matter.

5.      Venue is proper in Delaware County pursuant to Pa.R.C.P. §§1006 and 2179 because it is the county where one or more Defendants reside and where facts and circumstances giving rise to this Complaint took place.

## FACTS

6.      Plaintiff has been a church in Media since as early as 1851, and has provided a number of community service projects and ministries since it opened its doors to the community.

7.      In June of 1994, a member of Plaintiff, First United Methodist Church of Media, requested permission from the Administrative Council to visit a food center in Broomall to gather information that would allow Plaintiff to begin a food bank in the church.

8.      The food bank was officially founded on September 19, 1995, at the Administrative Council of Plaintiff.  The progress of the plan to set up a food bank was explained, and a motion was made to begin the Media Food Bank in Plaintiff's church; it was seconded and approved.

9.      Media Food Bank has been a ministry of Plaintiff since 1995 as is documented in the minutes of the Administrative Council. There is documentation from the Ad Council meetings from 1995 to 2024 of the management and activity of Media Food Bank as a church ministry.

10.      In or around the early 2000s, the Media Food Bank became a member of the Delco Interfaith Food Assistance Network (DIPHAN) to start receiving food from the state and local governments.

11.      During the period from 1995 until 2024, Plaintiff's Media Food Bank has been operating as a ministry of the church at 350 W. State St.  Media, Pa. The location now includes the entire 1st floor of the education building, entrance on Baker St.

12.     Plaintiff's food bank ministry has been known as the Media Food Bank since it began more than twenty-eight (28) years ago.

13.     During the time that the food bank has been opened, Plaintiff has operated the Media Food Bank.

14.     Throughout the years, Plaintiff's Media Food Bank continued to expand, resulting in Plaintiff making an additional room available for storage as donations picked up.

15.     In 2008, Plaintiff also opened the Clothing Closet in the lower level of the church - further expanding the overall community impact.

16.     In March of 2020, in response to the Covid-19 pandemic and a corresponding increase in demand and donations, the Media Food Bank was completely reconfigured by Plaintiff almost overnight.

17.     After ballooning during the pandemic, the number of people served has remained much higher than pre-pandemic levels with increasing hunger and food insecurity.

18.     After almost 30 years, the Food Bank continues its mission in service to Delaware County individuals and families in need - thanks to ongoing community support from many donors and volunteers.

19.     Defendant Paul Mickle was a long-time volunteer at Plaintiff's Media Food Bank.

20.     In or around July 1, 2023, Defendant Mickle asked Plaintiff if he could be hired to continue to do the work that he was doing at the food bank.

21.     Plaintiff agreed to hire Defendant Mickle as Director of Operations/Director of Community Engagement and pay him as an employee.

22.   As Director of Operations and Community Engagement, Defendant Paul was responsible for overseeing the general operations of day-to-day activities of Plaintiff's Media Food Bank. The general operations included, but was not limited to, the following:

- Formulate and layout strategies to reach future goals;
- Ensure Food Bank commitments are satisfied as close to 100% of the time as possible;
- Manage and staff volunteers as needed based on the organizational needs;
- Manage and Foster relationships with the 10+ commercial vendors;
- Manage and Foster relationships with 200+ volunteers and loyal donors;
- Recruit, screen, and train incoming volunteers;
- Report to and keep church staff informed of Food Bank activities;
- Manage and staff the collection of 20 +/- deliveries a week at vendor specified times;
- Manage and staff a rotation of 21+ volunteers for donation window per week;
- Manage and staff distribution times with each having a rotating roster of 30+ volunteers;
- Manage and staff 40+ volunteer drivers to fulfill delivery commitments;
- Ensure food & supply inventory is kept up and items replaced as needed;
- Generate paperwork needed to collect information while complying with state rules; and
- Manage the Food Distribution process.

23.   Although Defendant Paul was an asset to Plaintiff, Plaintiff recognized the need to hire a Director with more experience with managing the food bank and Defendant Paul stated at a meeting on November 22, 2023, that he knew he "had some skills to learn to be an effective leader".

24.   On November 22, 2023, Plaintiff informed defendant Paul that it was searching for a new director to oversee the daily operations of the food bank and that Plaintiff hoped defendant Mickle would work with the new person.

25.   Further, Plaintiff had become aware that someone had filed articles of incorporation in Pennsylvania for the name "Media Food Bank".

26.     Plaintiff inquired with Defendant Mickle as to his knowledge of the occurrence of this filing to which Defendant Mickle responded that he was aware that it had been done.

27.     Defendant Mickle admitted that he did not inform Plaintiff and that it was a conflict of interest to work for the church and hide the fact that he was aware.

28.     On December 11, 2023, defendant Mickle offered his resignation and indicated that he was planning to return simply as a volunteer.

29.     On or before December 12, 2023, Defendant Mickle, while still working with Plaintiff, became the President of Defendant Media Food Bank. A copy of a December 12, 2023 Statement of Correction filed with the Pennsylvania Department of State is attached hereto as **EXHIBIT "A"**.

30.     On or about January 16, 2024, Plaintiff hired the current director.

31.     Defendant Mickle failed to inform Plaintiff that he was the President of Defendant Media Food Bank.

32.     Defendant Paul refused to meet or talk to the new director and refused to release any information regarding the food bank's Facebook page, volunteer information, or details related to the food bank operations.

33.     Defendant Mickle did not return to Plaintiff's Media Food Bank after January 11, 2024.

34.     Defendant Mickle took the administrative access information for Plaintiff's Media Food Bank Facebook page and one of the phone numbers.

35.     On information and belief, Defendant Mickle, using the contact information obtained while working with Plaintiff, contacted or attempted to contact volunteers, groups and individuals that had donated or volunteered at the food bank in the past.

36.     On information and belief, Defendant Mickle contacted, or attempted to contact,

Plaintiff's food rescue partners including, but not limited to, Wegman's, Trader Joe's, etc.

37.     On information and belief, defendant Mickle contacted SHARE (the Delaware

County organization that provides food to local food banks) and attempted to co-opt the contract

for the food distributions Plaintiff received from SHARE by changing the federal identification

number (EIN) to the EIN associated with Defendant Media Food Bank, Inc.

38.     Since Defendant Mickle ceased working with Plaintiff, Defendants have

purposely attempted to confuse the public as to their affiliation with Plaintiff.

39.     On January 24, 2024, Defendants, via Plaintiff's Facebook page, posted a

statement that read in part:

> We are writing to update you about recent changes at the food bank at First
> Church Media and the creation of a separate 501(c)3 charity. ( EIN 93-
> 4729418)...
>
> However, this last year, the church began exerting more control over the food
> bank, prompting a group of volunteers to learn more about the church's
> relationship with the food bank.  It came to our attention that the food bank did
> not have prior IRS recognized 501(c)3 status and was therefore ineligible for
> many federal and private grants. This also raised concerns regarding compliance
> with Pennsylvania guidelines for nonprofits.
>
> Some volunteers spoke with an attorney and worked to register a food bank as a
> separate Pennsylvania nonprofit and obtained IRS determination as a 501(c)3
> recognized charity under the name "Media Food Bank". We, with Paul, remain
> dedicated to the goal of making the newly recognized 501(c)3 charity named
> "Media Food Bank" a thriving community resource providing food and essential
> items to individuals and families in need in Delaware County.  We remain
> optimistic that this can be accomplished with First Church Media and we
> continue to request meetings with the church's leadership.
> Please be aware donations made to Media Food Bank will not get to First Church
> Media nor will they go to the food bank they currently operate under Director
> Michael Zeltt.  Similarly donations made to First Church Media will not get to
> us.
>
> Though some of our volunteers still assist with their food bank we are entirely
> separate entities.

> We do not have any further information about the Church's decision or its impact on the food bank's operations...

A copy of the January 23, 2024 Facebook post is attached hereto as **EXHIBIT "B"** and incorporated herein.

40.    Plaintiff did it authorize Defendants to use its Facebook page, nor did Plaintiff authorize Defendants to make the statements made in the post.

41.    As a direct result of the post, Plaintiff's volunteers, donors and partners were confused and quite upset by the insinuations made in the posts.

42.    As a result of the confusion caused by the posts and the registration of Defendant Media Food Bank as a separate entity, donors and volunteers have become confused about where their donations are going or decided to cease making donations to Plaintiff's Media Food Bank. An example email from a donor expressing her desire to stop donations is attached hereto as **EXHIBIT "C"** and incorporated herein.

43.    Defendants continue to refuse to return the Facebook page back to Plaintiffs. Defendants continue to use Plaintiff's Facebook page to discredit Plaintiff, promote Defendant Media Food Bank by confusing followers.

44.    Plaintiff owns all right, title, and interest in and to the use of MEDIA FOOD BANK as applied to or used in association with the food bank located at 350 West State Rd., Media, Pa.

45.    Defendants have been and continue to infringe upon Plaintiff's Media Food Bank trademark in Delaware County, Pennsylvania and elsewhere in Pennsylvania by registering the name media Food Bank as a separate 501(c) corporation that performs the same community

service as Plaintiff using the same name ("Media Food Bank") (hereinafter "Defendants' infringing activities").

46.     Defendants' infringing activities have not been approved, authorized, or otherwise consented to by Plaintiff.

47.     Defendants' infringing activities have caused, are likely to cause, and are causing confusion, mistake, and/or deception on the part of donors, regarding where their donations are going and whether the donations were going where they were expected.

48.     Defendants' infringing activities have caused, are likely to cause, and are causing confusion, mistakes, and/or deception on the part of donors regarding the association (or lack thereof) of Defendants to Plaintiff, or as to the origin, sponsorship or approval of Defendants' services by Plaintiff.

49.     Defendants' infringing activities misrepresent the nature, characteristics, and origins of Defendants' services.

50.     Defendants' infringing activities have caused and are continuing to cause damages to Plaintiff in an amount which is difficult to quantify.

51.     Defendants' activities have caused, and continue to cause, irreparable harm to Plaintiff and Plaintiff's goodwill and reputation.

52.     Defendants' infringing activities constitute common law infringement of Plaintiff's Media Food Bank trademark.

53.     Defendants have been and continue to infringe Plaintiff's trademark rights with full knowledge of or at least willful and reckless disregard for Plaintiff's common law rights and knowing that the Media Food Bank mark is associated exclusively with Plaintiff and designates services of Plaintiff.

54.     Defendants' conduct is willful, wanton, fraudulent, and malicious, and is undertaken with intent to reap benefit of Plaintiff's goodwill and well-known Media Food Bank trademark.

55.     Unless enjoined and restrained by this Court, Defendants will continue o engage in such infringing activities, irreparably harm and immediately injure Plaintiff, and deceive the public.

56.     Plaintiff has no adequate remedy at law in that Defendants will continue their infringing activities without court intervention, as alleged above.

## COUNT I
## UNFAIR COMPETITION

57.     The foregoing paragraphs are incorporated by reference as if fully set forth herein.

58.     By virtue of the acts described above, Defendants have misappropriated confidential information and resources of Plaintiff, and have employed unfair and deceptive practices intended to interfere with Plaintiff's ability to fairly compete with Defendants.

59.     Additionally, Defendants' appropriation and actual use of the Media Food Bank trademark and the goodwill and reputation associated therewith and attached thereto constitute unfair competition under the common law.

60.     Defendants' actions as alleged herein have caused and will continue to cause irreparable damage and injury to Plaintiff if not enjoined by this Court.

61.     Defendants have committed these acts maliciously and for the sole purpose of inflicting harm on Plaintiff or to benefit themselves at the expense of Plaintiff.

62.     As a direct and proximate result of Defendants' unfair competition, Plaintiff has suffered substantial damages.

63.    Defendants' actions have been willful and outrageous and undertaken with reckless indifference to the rights of Plaintiff, warranting the imposition of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants for a sum in excess of $50,000.00 in addition to costs, interest, fees and other relief this Honorable Court deems just and proper.

## COUNT II
## TORTIOUS/INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

64.    The foregoing paragraphs are incorporated by reference as if fully set forth herein.

65.    As described above, Defendants, while Defendant Paul Mickle was a long time volunteer and employee of Plaintiff's Media Food Bank and through the use of Plaintiff's resources diverted and usurped donations and opportunities in favor of themselves at the expense of Plaintiff.

66.    Plaintiff had a reasonable expectation that has been lost as a result of Defendants' foregoing conduct.

67.    As a direct and proximate result of Defendants' interference, Plaintiff, and the community it serves, have suffered substantial damages.

68.    Defendants' actions have been willful and outrageous and undertaken with reckless indifference to the rights of Plaintiff, warranting the imposition of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants seeking injunctive relief in addition to costs, interest, fees and other relief this Honorable Court deems just and proper.

## COUNT III
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

69.    The foregoing paragraphs are incorporated by reference as if fully set forth herein.

70.     Under Pennsylvania law, a cause of action exists for aiding and abetting a beach of fiduciary duty pursuant to Section 876 of the Restatement (Second) of Torts.

71.     The elements of a cause of action for aiding and abetting a breach of fiduciary duty are (1) a breach of a fiduciary duty owed to another, (2) knowledge of the breach by the aider and abettor, and (3) substantial assistance or encouragement by the aider and abettor in effecting that breach.

72.     By virtue of his affiliation with Plaintiff as an officer and employee, Paul Mickle owed a fiduciary duty to Plaintiff.

73.     Upon Plaintiff's information and belief, Defendant Media Food Bank at all time material hereto was aware of the nature of Mickle's employment and fiduciary relationship with Plaintiff.

74.     In spite of and with knowledge of the foregoing, Defendant MEDIA FOOD BANK  was formed, along with Defendant Mickle in order to aid and abet Mickle's illicit activity as alleged herein, including Mickle's use of Plaintiff's volunteers, business office, equipment and contacts to collect money from actual and prospective donors of Plaintiff's Media Food Bank.

75.     Through the ownership and operation of MEDIA FOOD BANK, INC., substantial assistance and encouragement was given to Paul Mickle and aided and abetted Mickel's breach of fiduciary duty.

76.     As a result of Defendants' aiding and abetting a breach of fiduciary duty as averred herein, Plaintiff suffered damages in an amount that is currently unclear due to the fact that most records pertaining to Defendants' foregoing conduct are in the control of Defendants.

**WHEREFORE**, Plaintiff demands judgment against Defendants seeking injunctive relief in addition to costs, interest, fees and other relief this Honorable Court deems just and proper.

**COUNT IV**
**CIVIL CONSPIRACY**

77. The foregoing paragraphs are incorporated by reference as if fully set forth herein.

78. To state a valid claim for civil conspiracy in Pennsylvania, a party must show that "two or more person combined or agreed with intent to do an unlawful act or to do any otherwise lawful act by unlawful means."

79. By engaging in the aforesaid conduct more specifically described in Paragraphs 18 through 28 hereinabove, the Defendants engaged in the following acts:

a. Unfair Competition

b. Breach of fiduciary duty;

c. Intentional interference with contractual relationships;

d. Intentional interference with prospective contractual relationships; and

e. Conversion.

80. As a result of the conspiracy averred herein, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants seeking injunctive relief in addition to costs, interest, fees and other relief this Honorable Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

(a) That Defendants turn over control of Plaintiff's accounts, including the Media Food Bank Facebook page and website;

(b) That Defendants, its agents, affiliates, servants, employees and attorneys and those person in active concert with or controlled by them be permanently enjoined from:

    1.  Further acts of infringement of the Media Food Bank trademark;

    2.  Initiating, copying, duplicating, using, reproducing, registering, attempting to register and/or displaying any mark incorporating or so resembling Plaintiff's Media Food Bank trademark as to be likely to cause confusion, mistake and/or deception therewith;

    3.  Using any unauthorized copy or colorable imitation of any mark of Plaintiff in such fashion as it likely to relate or connect Defendants with Plaintiff, or vice versa;

    4.  Using any false description or representation or any other thing calculated or likely to cause consumer/donor confusion, deception or mistake in the marketplace with regard to anu mark of Plaintiff on identical or closely related to Plaintiff's services; and

    5.  Causing likelihood of confusion to any member of the public.

(c) That Defendants be enjoined permanently from soliciting donors obtained by Defendants unfairly, through the use of Plaintiff's goodwill and trademark, Media Food Bank;

(d) That Defendants be required to account for all donations made to it during the relevant time period and for those donations meant for the Plaintiff's Media Food Bank, the funds are to be transferred to Plaintiff;

(e) That Plaintiff be awarded actual, compensatory, and punitive damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and costs; and

(f)   That Plaintiff be awarded such other and further necessary and proper relief as the

Court may deem just and proper.


                                        KELLER, LISGAR & WILLIAMS, LLP


DATED:  02/23/2024                 BY:    /s/Darryl W. Shorter
                                        DARRYL W. SHORTER, ESQUIRE
                                        Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania, Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

KELLER, LISGAR & WILLIAMS, LLP

DATED: 02/23/20224                    BY:      /s/Darryl W. Shorter
                                               **DARRYL W. SHORTER, ESQUIRE**
                                               **Attorney for Plaintiff**

# EXHIBIT "A"

 

0013671787



**COMMONWEALTH OF PENNSYLVANIA**
*Department of State*
*Bureau of Corporations and Charitable Organizations*
PO Box 8722
Harrisburg, Pennsylvania 17105-8722
**STATEMENT OF CORRECTION**
Fee: $70

┌─────────────────────────────────┐
│  Pennsylvania Department of State │
│         **-FILED-**               │
│  Amendment #: 0013671787          │
│  Date Filed: 12/12/2023           │
└─────────────────────────────────┘

**DSCB:15-138 (rev. 1/2023)**

In compliance with the requirements of 15 Pa.C.S. § 138 (relating to statement of correction), the undersigned association or other person, desiring to correct an inaccurate, defective or erroneous record, hereby states that:

**Record Information**

| | |
|---|---|
| File number | 0013664863 |
| Current name | Media Food Bank |
| Original file date | 12/06/2023 |
| Filing Type | Domestic Non-Profit Corporation |
| Filing Subtype | Nonprofit Corporation |
| The statute by or under which the association was formed (or the preceding filing was made) is | Nonprofit Corporation Law of 1988 |

**Document with Inaccuracy or Defect to be Corrected**

| | |
|---|---|
| Form name and number | DSCB:15-5306/7102 Articles of Incorporation - Nonprofit |
| Date filed | 12/06/2023 |

**Inaccuracy or Defect**

| | |
|---|---|
| Corrections in wizard or text/upload | The correction(s) are set forth in this form (i.e. name, address, registered office, incorporators/organizer corrections). |

If the document was erroneously executed, check one of the following:

**Effective Date Corrections**

| | |
|---|---|
| Effective date correction | No change to effective date |

**Home Jurisdiction Addresses**

This page is not applicable to this filing type.

**Current Registered Office or Commercial Registered Office Provider**

| | |
|---|---|
| Current Registered Office Selection | The name of the commercial registered office provider and the county of venue is |
| Search for Commercial Registered Office Provider (CROP) | Registered Agents Inc. Commercial Registered Office Provider |
| Venue and Publication County | ERIE |

**Incorporators**

| Name of individual or organization | Address |
|---|---|
| ☑ Mary J. Lanni | 100 PINE STREET HARRISBURG, PA 17101 |

**Stock**

The corporation is organized on a nonstock basis

The corporation is incorporated under the Nonprofit Corporation Law of 1988 for the following purpose or purposes.
See attached addendum

**Members**

B0636-3911 12/12/2023 1:23 PM Received by Pennsylvania Department of State

B0636-3912 12/12/2023 1:23 PM Received by Pennsylvania Department of State

| Select one | | This corporation shall have no members. |
|---|---|---|

Electronic Signature

**IN TESTIMONY WHEREOF, the undersigned association or other person has caused this Statement of Correction to be signed by a duly authorized officer thereof or otherwise in its name.**

| *President* | *Paul Mickle* | *12/12/2023* |
|---|---|---|
| Signer's Capacity | Sign Here | Date |




0013671787



**COMMONWEALTH OF PENNSYLVANIA**
*Department of State*
**Bureau of Corporations and Charitable Organizations**
PO Box 8722
Harrisburg, Pennsylvania 17105-8722
**STATEMENT OF CORRECTION**
Fee: $70

| Pennsylvania Department of State |
|---|
| **-FILED-** |
| Amendment #: 0013671787 |
| Date Filed: 12/12/2023 |

B0636-3911 12/12/2023 1:23 PM Received by Pennsylvania Department of State

---

## DSCB:15-138 (rev. 1/2023)

In compliance with the requirements of 15 Pa.C.S. § 138 (relating to statement of correction), the undersigned association or other person, desiring to correct an inaccurate, defective or erroneous record, hereby states that:

**Record Information**

| | |
|---|---|
| File number | 0013664863 |
| Current name | Media Food Bank |
| Original file date | 12/06/2023 |
| Filing Type | Domestic Non-Profit Corporation |
| Filing Subtype | Nonprofit Corporation |
| The statute by or under which the association was formed (or the preceding filing was made) is | Nonprofit Corporation Law of 1988 |

**Document with Inaccuracy or Defect to be Corrected**

| | |
|---|---|
| Form name and number | DSCB:15-5306/7102 Articles of Incorporation - Nonprofit |
| Date filed | 12/06/2023 |

**Inaccuracy or Defect**

| | |
|---|---|
| Corrections in wizard or text/upload | The correction(s) are set forth in this form (i.e. name, address, registered office, incorporators/organizer corrections). |

If the document was erroneously executed, check one of the following:

**Effective Date Corrections**

| | |
|---|---|
| Effective date correction | No change to effective date |

**Home Jurisdiction Addresses**

This page is not applicable to this filing type.

**Current Registered Office or Commercial Registered Office Provider**

| | |
|---|---|
| Current Registered Office Selection | The name of the commercial registered office provider and the county of venue is |
| Search for Commercial Registered Office Provider (CROP) | Registered Agents Inc Commercial Registered Office Provider |
| Venue and Publication County | ERIE |

**Incorporators**

| Name of individual or organization | Address |
|---|---|
| ☑ Mary J. Lanni | 100 PINE STREET HARRISBURG, PA 17101 |

**Stock**

The corporation is organized on a nonstock basis

The corporation is incorporated under the Nonprofit Corporation Law of 1988 for the following purpose or purposes.
See attached addendum

**Members**

# EXHIBIT "B"



**Media Food Bank**
January 23 at 10:03 PM · ⊙

We are writing to update you about recent changes at the food bank at First Church Media and the creation of a separate 501(c)3 charity. (EIN 93-4729418)

Media Food Bank was initially started by several friends in 1995, one of them was our friend and Director, Paul's mom. Paul has been a dedicated volunteer ever since. He has played a crucial role in the growth and operations of the Media Food Bank, by dedicating countless hours volunteering, managing communications, organizing, and networking; particularly during the challenges of the Covid pandemic. Mostly, First Church Media has left the management and operation of the food bank in the hands of volunteers under the leadership of Paul.

However, this last year, the church began exerting more control over the food bank, prompting a group of volunteers to learn more about the church's relationship with the food bank. It came to our attention that the food bank did not have prior IRS recognized 501(c)3 status and was therefore ineligible for many federal and private grants. This also raised concerns regarding compliance with Pennsylvania guidelines for nonprofits.

Some volunteers spoke with an attorney and worked to register a food bank as a separate Pennsylvania nonprofit and obtained IRS determination as a 501(c)3 recognized charity under the name "Media Food Bank". We, with Paul, remain dedicated to the goal of making the newly recognized 501(c)3 charity named "Media Food Bank" a thriving community resource providing food and essential items to individuals and families in need in Delaware County. We remain optimistic that this can be accomplished with First Church Media and we continue to request meetings with the church's leadership.

Please be aware donations made to Media Food Bank will not get to First Church Media nor will they go to the food bank they currently operate under Director Michael Zefft. Similarly donations made to First Church Media will not get to us.

Though some of our volunteers still assist with their food bank we are entirely separate entities.

We do not have any further information about the Church's decision or its impact on the food bank's operations.

We welcome your feedback and appreciate your support.

You may also reach us by email at mediafoodbankcontact@gmail.com.

Friends of Media Food Bank

👍❤️😊 Erin O'Neill-Schwabe and 118 others          194 comments  5 shares

👍 Like                    ↩ Share

💬 Media Food Bank limited who can comment on this post.

Most relevant ▾

⊙ Top fan
**Kathleen Stiles Fingle**
The Media Food Bank, under Paul's leadership, has been an amazing contribution to our community. I would hate to see the church take over and control them now that they are 501.3 corporation and tap into their money. This is just not a great situation.... See more

👍❤️ 26

# EXHIBIT "C"

From: jenniferwalsh001 <jenniferwalsh001@comcast.net>

Date: Fri, Jan 26, 2024 at 8:38 AM

Subject: Food bank donation through your website

To: <info@firstchurchmedia.org>

Good morning,

I want to stop my recurring donation to the food bank. Please give me the info needed on doing this. I don't feel comfortable giving money to this program through the church anymore since i have been told the church isn't being transparent in funds allocated to the food bank. I use egiving and see no info on how to stop the donation. I would appreciate some instructions. Thanks so much

Jenn

**Date:** January 25, 2024 at 7:44:30 AM EST

**To:** mzeltt@mediafoodbank.org, info@mediafoodbank.org, info@giving.ncsservices.org

**Subject: STOP ALL DONATIONS**

Hello

Any and all donations made by myself and my family, under this email address and name, are directed to be ceased immediately.

I request this organization provide proof and evidence of its official IRS declaration for its 501(c)3 status. Further, I am requesting a clarification regarding this organization's perspective regarding the split with the prior operators of the food bank.

Phil Lynch

FILED
02-23-2024 01:38 PM
OFFICE OF JUDICIAL SUPPORT
DELAWARE COUNTY, PA

RECEIVED
CT ADM. OFFICE
DELAWARE CO. PA.

MAR 23 AM 12:28

**IN THE COURT OF COMMON PLEAS DELAWARE COUNTY, PENNSYLVANIA
CIVIL DIVISION – LAW**

| | | |
|---|---|---|
| **FIRST UNITED METHODIST CHURCH** | : | **NO.  CV-2024-001795** |
| **OF MEDIA a/k/a FIRST CHURCH MEDIA** | : | |
| | : | |
| **Plaintiff** | : | |
| **v.** | : | |
| | : | |
| **MEDIA FOOD BANK and PAUL MICKLE** | : | |
| | : | |
| **Defendant** | : | |

# <u>NOTICE OF HEARING</u>

**AND NOW**, this **1ˢᵗ** day of **March, 2024** the Emergency Petition for Preliminary Injunction and any response thereto is scheduled for a hearing on **<u>Friday, March 15, 2024</u>** at 9:30 a.m. in Courtroom 8, Delaware County Courthouse, 201 W. Front Street, Media, PA  19063.

**BY THE COURT:**

*John J. Whelan*
_____
**JOHN J. WHELAN, J.**

cc:     All Counsel (via Email)

Andre R. Desir, Esquire
Attorney Identification Number 331388
7 Dowlin Forge Road
Exton, PA 19341
Telephone: 917-717-0157
adesir@trustandwill.com

Counsel for Media Food Bank, et al.

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY
PENNSYLVANIA, CIVIL DIVISION

|  |  |  |
|---|---|---|
| First United Methodist Church of Media a/k/a First Church Media | : : : | Case No. CV-2024-001795 |
| Plaintiff, | : : | Civil – Preliminary Injunction |
| Vs. | : : : | |
| Media Food Bank and Paul Mickle | : : : | |
| Defendants. | : : | |

## **PRELIMINARY OBJECTION**

Defendant, Media Food Bank and Paul Mickle, by and through undersigned counsel, files this Preliminary Objection in opposition to Plaintiff's application for emergency injunctive relief and declares as follows:

## **INTRODUCTION**

1. Defendant, Paul Mickle ("Paul"), has dedicated his life to charity, specifically, to the charitable cause of feeding the less fortunate folks in Media Pennsylvania.

2. Paul's charitable legacy began with and was instilled into him through his mother, Marg Baker, who like Paul, was a volunteer at First United Methodist Church's facilities.

3. Paul, while a volunteer at First United Methodist Church, for twenty-four of the preceding twenty-five years, performed his charitable acts without compensation and for no personal benefit.

4.  Paul's dedication to feeding the less fortunate, while a volunteer, during these past two decades have rendered his personage indistinguishable from the food bank and the food bank activities at First United Methodist Church. (see exhibit A.)

5.   In 2023, Media City Lifestyle published an article, honoring Paul Mickle as a "Man of Media" for his contributions to the Media Food Bank as a child, and now as an adult. (see exhibit A.)

6.   In 2012, Paul Mickle, won the Friends of Ridley Creek State Park's Young Volunteer award, recognizing his services to the community by "pick[ing] up baked goods from a bakery at the end of the day and return[ing] them to the food bank for distribution." (see exhibit B.)

7.  Counsel would need several pages to include the various mentions in the media, local organizations, and civic groups, which have celebrated or identified the charitable works that Paul Mickle has done for the Media community and for the charitable purpose of feeding the less fortunate.

8.  On or around October 30, of 2011, Paul Mickle, *sua sponte*, recognizing the important role technology and social media would have on informing folks where they can get a meal, created a Facebook community page for "Media Food Bank," the name for the page being one that Paul created and workshopped on his own.

9.  On or around June 14, 2011, Bonnie Scarborough, a church leader, objected to the use of "Media Food Bank" as the name for the Facebook page, and instead suggested "Second Harvest." (see exhibit C.)

10.  First United Methodist Church has referred to and used several different names to identify their food bank and food services in the past twenty years, including "Second

2

Harvest," "Media Methodist Food Center," "First United Methodist Church Food Bank" "Media Food Center," "Media Second Harvest Food Center." (see exhibit D)

11. Since the inception of the Facebook page titled Media Food Bank, Paul Mickle has been the sole director, administrator, and controller of the Facebook page, as it is tied to his personal email address.

12. On or around November 10, 2023, in the midst of internal hostility with the Church, Paul was notified by Trader Joes, a partner of the food bank who makes in-kind donations of food, that they would cease donations to the food bank because they could not verify the food banks status as a registered, tax exempt, charitable entity and the church did not have a valid tax identification number for charitable purposes. (see exhibit E)

13. Paul's relationship with First United Methodist Church became contentious in recent years and this contention, along with the surprising revelation by Trader Joes, caused Paul to venture out on his own to continue the charitable mission of feeding the less fortunate.

14. On or shortly before December 7, 2023, Paul hired and paid for with his own funds, Attorney Frannie Reilly, of McNees ,Wallace, & Nurick to register Media Food Bank as a non-profit corporation in Pennsylvania.

15. On or around December 20, 2023, Paul filed an application and asked for the IRS to issue a charitable determination letter to Media Food Bank identifying their organization as a tax exempt 501(c)3 organization to which they received a favorable determination.

## PRELIMINARY OBJECTION TO THE REQUEST FOR EMERGENCY INJUNCTIVE RELIEF

Summary:

Defendant preliminary objects to the Petition for Emergency Injunction filed by First United Methodist Church because of (I) the inclusion of scandalous and impertinent matter under Pa.R.Civ.P. 1028(a)(2), (II) the pleadings are legally insufficient (demurrer) under Pa.R.Civ.P 1028(a)(4), (III) the insufficient specificity of the pleadings under Pa.R.Civ.P. 1028(a)(3), (IV) failure to exhaust all statutory remedies under Pa.R.Civ.P 1028(a)(7),  (V) Plaintiffs have not exhausted non-statutory remedies under Pa.R.Civ.P 1028(a)(8), (VI) the Petition assumes facts not in evidence but offers no evidentiary support for them, and because Plaintiff fails to satisfy a single of the six elements necessary for a grant of injunctive relief, let alone all of them.

Moreover, the request for injunctive provides zero evidence, is unverified, and is replete with the logical fallacy of begging the question as Plaintiff uses the Complaint wherein the action stems from as proof of the evidentiary support necessary for the grant injunctive relief, thus Plaintiff is attempting to, *lazily*, introduce their own (false) allegations as the facts necessary to satisfy their evidentiary burden of proof. Alternatively, Pennsylvania is a fact pleading jurisdiction and as such Plaintiffs are required to plead with specificity the facts necessary to support any allegations made in their Complaint, and here, Plaintiff has patently failed to plead with specificity facts to sustain their heavy burden.

Lastly, this Court should deny Plaintiff's request for Emergency Injunction because it is against public policy. The granting of a preliminary injunction is considered an extraordinary remedy borne of out urgent necessity. Here, Plaintiff is requesting an Order directing Defendant

to "Cease using [sic] Media Food Bank name when speaking with volunteers and donors" their request is not only vague and imprecise, but it's an improper use of a procedure reserved for the weightiest of legal issues, not the pettifoggery of who controls a nonprofit community Facebook Page.

I.   Plaintiff's Petition Should Be Stricken Because They Impugn Defendant's Character With Salacious Accusations Unrelated To The Burden Of Proof Necessary For Injunctive Relief

Plaintiff's Petition for Emergency Injunction should be stricken and denied under Pa.R.C.P. 1028(a)(2) because they include immaterial slanderous accusations regarding Paul Mickles' motivations for leaving the Church's food bank and starting his own charity, namely, paragraph twelve (12) of the Complaint alleges that Paul Mickle "conspired to usurp the food bank... for the purpose of eliminating the food bank." Given the charitable nature, history, and Defendant's actions after the fact, this accusation is not only baseless but immaterial to their request for injunctive relief and the heavy burden they shoulder.

Under Pennsylvania Law For a preliminary injunction to issue the moving party must show: (1) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by money damages; (2) that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) that preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that is likely to prevail on the merits; (5) that the injunction it seeks is reasonably suited to stop the offending

5

activity; and (6) that a preliminary injunction will not adversely affect the public interest or public policy. Home Line Furniture Indus, Inc. v. Banner Retail Marketing, LLC, 631 F. Supp. 2d 628, 631, 632 (E.D. Pa. 2009) (citing Pa. R.C.P. 1531(a)); Vigilante v. Statharos, No. 08-cv-3408, 2009 WL 414014, at *3, 3 (E.D. Pa. Feb. 18, 2009); Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc., 828 A.3d 995, 1001 (Pa. 2003); Warehime v. Warehime, 860 A.2d 41, 46-47 (Pa. 2004).

For a preliminary injunction to issue, every one of these prerequisites must be established; if the petitioner *fails to establish any one of them*, there is no need to address the others. Allegheny Cnty. v. Com., 544 A.2d 1305, 1307 (Pa. 1988) (emphasis added). It is well settled that "[a] preliminary injunction's purpose is to preserve the status quo and to prevent imminent and irreparable harm that might occur before the merits of a case can be heard and determined." Ambrogi v. Reber, 932 A.2d 969, 976 (Pa. Super. 2007). Preliminary injunction is an "extraordinary remedy," and the party seeking the injunction bears a *heavy* burden of establishing the six prerequisites. Wolfington v. Bartkowski, 2023 WL 3839508 at *3 (Pa. Super. 2023) (non-precedential) quoting Allied Envtl. Serv., Inc. v. Roth, 222 A.3d 422, 426 (Pa. Super. 2019). "The proponent of a preliminary injunction faces a heavy burden of persuasion." Allegheny County v. Comm., 544 A.2d 1305, 1308 (Pa. 1988).

Here, Plaintiff, with the burden to establish a clear right to relief, makes salacious allegations about Defendant's motives rather than provide actual evidence of any immediate irreparable harm, that they are likely to succeed on the merits, and that granting them this injunction would maintain the status quo, instead they merely recite the standard as if it evidences a right to relief. In paragraph seventeen (17) of Plaintiff's Petition in an attempt to satisfy the greater injury element, Plaintiff claims "Clearly, the social media accounts in question

belong to Plaintiff, and Defendants have no right to them," rather than provide the Court with allegations of injury, and supplement those allegations with evidence, Plaintiff declares that they have already won the underlying suit, even though, factually, it is anything but clear what belongs to who and why.  Additionally, Plaintiff does not evidence or spell out what "greater harm" would occur absent the injunction, they merely allege that it will happen, but do not inform Defendant, or the Court, how.

Thus, this Court should strike the Petition, and Deny their request for injunction because they include salacious, impertinent information, attack Defendants character, and they do not evidence a right to relief or satisfy any of the six elements necessary for an injunction with their conclusory statements.

II.   Plaintiff's Petition Should Be Denied Because The Allegations Are Unverified, They Provide No Affidavit In Support Of Any Of Their Claims, Thus It Is Clear From Any Doubt That They Will Be Unable To Prove That They Are Entitled To The Facebook Page.

This Court should deny the request for injunctive relief because Plaintiff cannot establish or prove at the preliminary injunction stage that they are likely to succeed on the merits, that the Facebook Page in question "belongs" to them, they have not specifically alleged what irreparable harm will occur if this Court denies their request, and it is clear from all doubt that their request for injunction is not only premature but improperly filed.

Our Supreme Court has outlined that "A preliminary injunction is somewhat like a judgment and execution before trial." Herman v. Dixon, 141 A.2d 576, 577 (Pa. 1958). Thus, although an application for such relief is addressed to a Court's equitable discretion, the relief

should issue only where "there is an urgent necessity to avoid injury which cannot be compensated for by damages and should never be awarded except when the rights of the plaintiff are clear. Also, it should in no event ever be issued unless greater injury will be done by refusing it than in granting it." Id., 141 A.2d at 577. Accord, e. g., Bell v. Thornburgh, 420 A.2d 443, 445 (Pa. 1980); Berkowitz v. Wilbar, 206 A.2d 280, 280 (1965); Keystone Guild, Inc. v. Pappas, 159 A.2d 681, 681 (Pa. 1960).

Here, Plaintiff's Petition is unverified, and the allegations in the Petition should not be established or viewed as factual without evidentiary support, which Plaintiff provides none for, other than citation to their recently filed Complaint. Plaintiff has failed to establish and cannot possibly establish that the relief is "urgent and necessary" or that greater harm will occur if they are not given control and access to the Facebook page.

This Court should deny their request for injunction because their pleading is legally insufficient, it fails to plead with specificity what, if any harm they will suffer, Plaintiff does not establish, and cannot establish an urgent immediate need for relief, nor is their any harm suffered by control and access to a Facebook page, given that Defendant, created the page, controlled and ran the page since its inception ten plus years ago.

III.    Extraordinary Relief Is Unwarranted Because Plaintiff's Claims Are Allowed To Run Their Normal Course In Pennsylvania Courts, And They Have Provided No Evidence That They have Attempted To Establish Ownership Of The Facebook Page With Facebook.

Defendant preliminary objects to this Petition and this Court should deny their request to relief under Pa.R.C.P 1028(a)(7) and 1028(a)(8), because Plaintiff has not exhausted or provided

evidence, or even alleged that they have exhausted non-statutory remedies or causes of actions, namely, contacting Facebook and establishing that they own or should own the Facebook Page at issue.

Plaintiff's relief requested is two-fold, (1) an Order directing Defendant to remit, submit, and turn over control of a Facebook page that Defendant created, and (2) an Order directing Defendant to cease certain vague activities. Plaintiff has not established or even alleged that they have exhausted all other options to seek the relief that they are allegedly entitled to.

With a similar issue of first impression the Commonwealth Court looked to our sisters' courts to clarify the appropriateness of certain injunctive relief in CKHS, Inc. v. Prospect Med. Holdings, Inc., 299 A.3d 179 (Pa. Commw. Ct. 2023), appeal granted, No. 299 MAL 2023, 2023 WL 8614240 (Pa. Dec. 13, 2023), the Court identifying similar compelling rational quoted "The grant of injunctive relief is an extraordinary remedy ... which should be granted only in limited circumstances." Frank's GMC Truck [Ctr.], Inc. v. [Gen.] Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988) (citing United States v. City of Philadelphia, 644 F.2d 187, 191 n.1 (3d Cir. 1980)). citing Justice Baldwin, sitting on the Circuit Court for the District of New Jersey wrote 193 years ago, "there is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing (of) an injunction; it is the strong arm of equity, that never ought to be extended unless to cases of great injury, where courts of law cannot afford an adequate or commensurate remedy in damages." Bonaparte v. Camden & A.R. Co., 3 F. Cas. 821 (C.C.D.N.J. 1830) (No. 1,617). (Nonpresidential opinion cited for persuasive value only.)

This Court should deny Plaintiff's request for injunction because they have not evidenced or alleged that they have exhausted other avenues prior to filing this request, on the contrary,

Plaintiff has filed their complaint and prior to a response from Defendant, immediately moved for injunctive relief using a delicate, extraordinary remedy, in a clumsy and heavy-handed way, in an attempt at one could only imagine is designed to bully and intimidate Defendant.

IV.    Plaintiff Is Not Entitled To Equitable Relief And An Injunction Because They Have Unclean Hands, Have Acknowledged That They Are Not Suffering An Injury And Have Publicly Stated They Are Willing To Give Up The Name "Media Food Bank."

This Court should deny the request for injunction because Plaintiff has unclean hands, is a bad faith actor, is accusing a volunteer of over 25 years of "civil conspiracy," usurpation, trademark infringement, unfair trade practices, seeking to "destroy their food bank," and all matter of tomfoolery.  Defendant established a nonprofit enterprise, Defendant has not and does not seek any personal gain or riches from their endeavor, Defendant only seeks to help feed the folks in Media through organizing volunteers, requesting free food and donations from surrounding businesses and receiving donations from charitable individuals. Simply stated Plaintiff is seeking civil remedies and penalties for charitable acts and service, a most unusual position for a church and ministry to take. Not only are Plaintiffs actions questionable morally, but their legal actions are dubious as well.

Plaintiff's underlying suit alleges, as a claim, unfair competition, followed to its logical end, Plaintiff is accusing Defendant of unfairly competing to give away free food and services to less fortunate folks in the community, not only a ludicrous proposition, but a legally insufficient one, as it would require Plaintiff to admit they are in the *business* of charity and that they are actively looking to prohibit other folks from also being charitable and giving things away for free.

10

Under Pennsylvania law a party who comes into a court of equity "must come with clean hands. The doctrine of unclean hands requires that one seeking equity act fairly and without fraud or deceit as to the controversy at issue." <u>Morgan v. Morgan</u>, 193 A.3d 999, 1005 (Pa. Super. 2018). The doctrine "is derived from the unwillingness of a court to give relief to a suitor who has so conducted himself as to shock the moral sensibilities of the judge." Id. "A court may deprive a party of equitable relief where, to the detriment of the other party, the party applying for such relief is guilty of bad conduct relating to the matter at issue." Id. The court has "wide range" to "refuse to aid the unclean litigant," but "in exercising this discretion, the equity court is free to refuse to apply the [unclean hands] doctrine if consideration of the record as a whole convinces the court that [its] application … will cause an inequitable result." Id. See <u>Matenkoski v. Greer</u>, 213 A.3d 1018 (Pa. Super. 2019) (property owners' recordings of neighbors did not violate Wiretap Act for purposes of establishing violation of zoning ordinance and nuisance for carrying on automobile repairs and restorations).

On January 24, 2024, Plaintiff, in an email to their donor list, community members, volunteers, church parishioners, officially announced that Defendant legally owns the name "Media Food Bank." (a true and correct copy of the email is attached to this complaint as Exhibit F.) Then, thirty (30) days letter, sends a cease-and-desist letter claiming they (Plaintiff) own the name, and that Defendant should stop using a name they legally registered, thus creating the very confusion they are accusing Defendant of perpetuating. Additionally, Plaintiff instructed and directed folks to report Defendant and not to make any donations to Defendant or their organization thus preventing them from fulfilling their calling to do good works. Taken to its logical end, Plaintiff actively campaigned to prevent Defendant from receiving charitable contributions to feed folks in need.

This Court should deny the Petition because Plaintiff is a bad faith actor with unclean hands who is not entitled to equitable relief as evidence by their campaign of misinformation, their vexatious actions to prevent charitable works from moving forward and these extreme measures taken to stop charitable activities.

## **CONCLUSION**

Defendant preliminarily objects to the Petition for Emergency Injunction because it is legally insufficient, it is replete with salacious accusations without basis in fact or evidence to support, Plaintiff comes to the Court with unclean hands, Plaintiff uses circular logic without evidence to support the finding of the six elements necessary to sustain the grant of an injunction, Plaintiff fails to meet and cannot meet the high standard necessary to sustain the issuance of an emergency injunction, Plaintiffs have not exhausted statutory remedies, Plaintiffs have not exhausted non-statutory remedies, extraordinary relief is not warranted under the these circumstances, and lastly Plaintiff provides no evidence nor support their vexatious allegations.

Therefore, fore the foregoing reasons this Court should deny Plaintiff's Petition for Emergency Injunction with prejudice, and lastly in support of Public Policy this Court should award attorney fees to Defendant for Plaintiff's improper use of this extraordinary procedure.


By:   /s/ *Andre R. Desir*
      Andre R. Desir, Esquire
      Counsel for Media Food Bank and Paul Mickel
      Adesir@trustandwill.com
      7 Dowlin Forge Road
      Exton, PA 19341

Dated: March 14, 2024

## <u>VERIFICATION</u>

I Paul Mickle, hereby swear, deposes, and says that I am the Defendant and managing member of Media Food Bank, a nonprofit corporation, in the above captioned case, and I have authorized the filing of this pleading. I have reviewed the allegations made in the foregoing, and to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on my recollection and understanding of events such that I believe them to be true.

/S/ *PAUL MICKLE*_____

Paul Mickle

Managing Member, and Director of
Media Food Bank, a nonprofit corporation

581 Farnum Road

Media Pa, 19063

**DATED:  MARCH /14/2024**

<u>**CERTIFICATE OF SERVICE**</u>

I, Andre R. Desir, Esquire, hereby certify that I caused a true and correct copy of the foregoing to be served via this Court's electronic filing system upon all counsel of record and that I mailed, on this day, a copy of the foregoing, first class mail, to Counsel of record at:

       Darryl W. Shorter, Esq

       C/O Keller, Lisgar, & Williams LLP

       101 E. Darby Road

       Havertown, PA 19083

By:   */s/ Andre R. Desir*
          Andre R. Desir, Esquire
          Counsel for Media Food Bank and Paul Mickel
          Adesir@trustandwill.com
          7 Dowlin Forge Road
          Exton, PA 19341

Dated: March 14, 2024

**EXHIBIT A**

Media City Lifestyle Magazine https://citylifestyle.com/articles/honoring-the-men-of-media

# Honoring the Men of Media

WHETHER EDUCATING, LEADING, INSPIRING, PROTECTING, OR SERVING...THESE
MEN DESERVE OUR APPRECIATION..

Article by Kari Tumminia
Photography by Jayne Toohey

*Originally published in* _M_LIKESHARE

**Paul Mickle, Director of Operations and Advancement**

Paul Mickle started working with Media Food Bank at 10 years old.  He was mentored by his mother's friend Juley Moberg who ran the food Bank until she left in November 2007. Paul naturally became responsible for distribution.

In 2012, Paul was honored with the Young Volunteer Award by the Pennsylvania Parks and Forest Foundation. Over a decade later, he continues to dedicate himself to the Friends Group at Ridley Creek and, since 1998, the Media Food Bank. When asked about Media, Paul shared, "Media has always been a fun town to grow up in and watch evolve over the decades. It is quite unique how it can go through changes and adapt through the years but at the same time keep the same distinct charm." And, with such a young start in the community, Paul says that Media chose him.

One of his most significant contributions has been helping to grow the food bank through the COVID-19 pandemic. Although it has always been a community staple, the food bank took on a life of its own during the pandemic. That need continues to rise. Paul encourages both those with the ability to continue to support the Media Food Bank, and those who need help to seek it out. He would love to eradicate the stigma that's often associated with getting help.
Media Food Bank at 444-442-0033.

**EXHIBIT B**

FRIENDS OF RIDLEY
CREEK STATE PARK



# The Friends

**VOLUME IV ISSUE I**        **SPRING/SUMMER 2012**

INSIDE THIS
ISSUE:

Paul Mickle Wins   1
Award

Original Mansion   1
Stove Restored

Spring Flowers   3

Open House and   4
Hoagie Dinner

2012 Photo   4
Contest Winners

Wildflower Walk   5
April 29th

Alyce Zellers   5

Annual Picnic   5
June 2nd

## Paul Mickle Wins PPFF Young Volunteer



**Paul celebrates more than ten years of volunteering at RCSP**

The Friends of Ridley Creek State Park is proud to announce that our dedicated volunteer Paul Mickle is being honored with the Young Volunteer Award for 2012 by the Pennsylvania Parks and Forest Foundation (PPFF). This new award was instituted this year to recognize a significant contribution to a park or forest by a person under the age of 25. Every year, PPFF gives numerous awards to recognize outstanding service and programs demonstrating the exemplary work being done in parks and forests by both staff and volunteers.

Paul is a familiar figure at Friends events and monthly trail work. Some people may not realize that Paul started volunteering with the Friends many years ago, starting as a trail worker. He was originally brought to the park by his father since Paul was not yet old enough to drive. He would work with the trail workers month after

(Continued on page 2)

### *(Paul Mickle: Continued from page 1)*

month, all year round. Several years of trail work passed and eventually Paul became a driver.

While he continued his volunteer work with the trail crews, Paul also had a job with a local food bank. One of his tasks there was to pick up baked goods from a bakery at the end of the day and return them to the food bank for distribution. Since the trail work at the park was a charity as well, the same bakery agreed to donate an additional days worth of baked goods one Saturday a month. Paul would then bring pastries and day old bread to be shared with the trail workers after the work party was done. This activity still continues to this day.

Paul took photographs of the workers and projects accomplished over the years. This collection of photographs is now saved on disks and is a great source to show interested parties what the Friends accomplish over a "typical" trail work party.

Paul has also been active during the annual holiday party at the Mansion. We provide guided tours of the Mansion, and when the size of the tour groups became unwieldy, Paul agreed to help organize the timing and number of guests for each tour, thereby improving the tour experience for both the guides and guests.

In December 2011 at the Friends holiday dance, Paul was instrumental in arranging to save the man-

mansion tour about the imminent scrapping of the stove. See the article in this newsletter about the stove restoration. Without Paul's intervention, which led to moving the stove for sand blasting, we would not have retained this historic artifact in the mansion. Paul even helped with the move and, of course, had the presence of mind to make a photographic record of the "moving day" event.

Our annual Photo Contest has provided great photographs for our picture calendar. Once again, Paul took some initiative and copied some of the photographs and framed them. Some of them were used as prizes at the holiday party and others were put up for sale at a street fair in Media, which Paul assisted with.

It seems that Paul Mickle is at every Friends of Ridley Creek State Park event. Not always out in front, but certainly behind the scenes making sure everything is going according to plan and ready to jump right in when anyone needs a little help.

The Board members of the Friends of Ridley Creek State Park were delighted to nominate Paul Mickle for the Young Volunteer Award when PPFF announced it, and we were thrilled when he was selected. The award will be officially presented at PPFF's annual banquet in Harrisburg on May 1, 2012.

*This article was contributed by Jack Miller, President of the Friends of Ridley Creek State Park.*

**EXHIBIT B (cont.)**
https://tylerarboretum.org/part-2-lucilles-garden-answering-the-call/

community. One could say that service makes all the difference and that it is the greatest calling.



Even before the pandemic, Tyler had donated food to the Media Food Bank on a weekly basis when we had surplus produce not used in our programming. We knew that fresh vegetables were highly sought after at the Food Bank. The pandemic quickly changed everything and made what we donated more important. Economic instability in our community has increased the number of people living with food insecurity. I wanted to find out how important the food has become.

In 2020, I sat down with Paul Mickle, one of the Directors at the Media Food Bank. Paul is also their Distribution Coordinator. Part of his job is to coordinate donations and also assist people in getting food. Paul tells me that the Media Food Bank "Used to serve the western third of Delaware County (prior to the pandemic). Now as part of crisis intervention, anyone living in Delaware County can come as geographical regions were no longer barriers." Paul discovered quickly just how much need was out there. Before the pandemic, the Media Food Bank served 40 to 60 families once a week on Thursdays and once a month on Sundays. **Now, the organization is serving over 100 families twice weekly**. Families are coming from many parts of the county. Some were already in need before the pandemic and with the crisis, many more joined them. According to

**EXHIBIT C**

**From:** Paul Mickle <paulmickle@msn.com>
**Sent:** Tuesday, June 14, 2011 7:11 PM
**To:** bud Bryan <budbryan@verizon.net>; Juley Moberg <juleym@gmail.com>; Denise Paul <denisempaul@comcast.net>
**Subject:** RE: Name of food bank

Naming the food bank isn't something I have considered, but now that I think about it, I think people tend to call it the "Media Food Bank" because the word "Media" defines its location. I have also come to like it this way, but if it were to be changed I would suggest trying to keep the name of the town in the name of the food bank.

Just my thoughts,
  From,
    Paul.

---

From: budbryan@verizon.net
To: juleym@gmail.com; paulmickle@msn.com; denisempaul@comcast.net
Subject: Re: Name of food bank
Date: Tue, 14 Jun 2011 17:39:55 -0400

How would that name be used?
Bud

> ----- Original Message -----
> **From:** Juley Moberg
> **To:** Paul Mickle ; Bud Bryan ; denisempaul@comcast.net
> **Sent:** Monday, June 06, 2011 11:09 AM
> **Subject:** Name of food bank
>
> Hello everyone,
>
> Bonnie Scarborough thought of a good name for our foodbank: Second Harvest. I really like it, and was wondering what you guys thought about. Apparently, there is a foodbank in Louisiana with this name, so I do not know if that would be a problem. Let me know what you think.
>
> Juley

**EXHIBIT D**

Paul Mickle

---

**From:** Second Harvest <secondharvestfb@gmail.com>
**Sent:** Sunday, February 10, 2013 6:43 PM
**To:** Mickle Paul <paulmickle@msn.com>
**Subject:** Food Bank email

Hi Paul,

Madelyn created Food Bank email and calendar;
                                the email address is: secondharvestfb@gmail.com
                                password:   mediafoodbank

When we meet, I can show you how to get into the calendar etc.

Let me know if you got this email.

Juley

## EXHIBIT E

aul Mickle

---

**From:** Brenda Olvera <bolvera@traderjoes.com>
**Sent:** Friday, December 8, 2023 1:21 PM
**To:** Paulmickle@msn.com <Paulmickle@msn.com>; peteholston@gmail.com <peteholston@gmail.com>
**Cc:** 637 - Media, PA <0637bkoff@traderjoes.com>; Jennifer Romo <jromo@traderjoes.com>
**Subject:** Trader Joe's Neighborhood Shares Program #637 Media, PA

Hello Pete and Paul,


I am writing to you in support of our partnership regarding store #637 Media. Unfortunately, we've been unable to verify your Federal Tax ID information within the IRS/non-profit data base. We will need to request a copy of your IRS exemption letter—this letter confirms the status as a non-profit organization. An example of such a letter has been attached for your reference. Please be advised we require this information in support of our Neighborhood Shares donations Program.


If helpful, feel free to email me directly with the letter/documentation. Thanks!


Best,


Brenda Olvera

Coordinator, Community Impact

Trader Joe's Company

(626) 803-5209

## EXHIBIT F

---------- Original Message ----------
From: Robin Beaver <robinbeaver61@gmail.com>
To: Robin Beaver <robinbeaver61@gmail.com>
Cc: Laurie Ann Rookard <laurieann@firstchurchmedia.org>, Harry Shreckengast <Hhshreck@gmail.com>, Pete Holston <peterholston1@gmail.com>, Ann Elise McLaughlin <annelisemcl@gmail.com>, Sudie <sudiegprice@gmail.com>, Susan Young <scyoung.604@gmail.com>
Date: 12/20/2023 4:25 PM EST
Subject: Media Food Bank Update

We are writing to share information with you about ongoing discussions related to the Media Food Bank. As you may have heard, a group of volunteers has filed incorporation documents for a 501(c)(3) non-profit organization under the name "Media Food Bank." This transition could help open up numerous opportunities for further funding, grants, and collaboration with like-minded nonprofit organizations.

On Saturday, Dec 16, 2023, some of those volunteers met with four representatives from First Church to discuss next steps for the food bank. (Meeting participants are listed below.) There will need to be a great deal of discussion and decision-making in the future as to when and how the food bank might become a separate entity. This group met to plan for management of the food bank in the interim. It was a productive meeting focused on our shared goals of serving our clients, collaboration, communication, and transparency.

At the December 18 meeting of the church's Ad Council, this group received approval to explore the development of a plan to transition the food bank leadership. Once a detailed plan has been created, it will be presented to the Ad Council for approval. We will be forming a Task Force to develop the transition plan. If you are interested in working with this group, please contact anyone listed below for more information.

More news will follow in the new year. In the meantime, please reach out to anyone listed below with questions. There will be opportunities for volunteers to share insights, concerns, and support as we move through this process. Thank you for your commitment and dedication to serving our clients through these many years.

Many wishes for a wonderful holiday season and a very happy new year!

Robin Beaver, Chair Administrative Council and Staff Pastor Parish Staff Relations Committee
First United Methodist Church of Media

Pete Holston, Treasurer
First United Methodist Church of Media

**EXHIBIT F (cont.)**

**From:** Virginia Burke <vlisaburke@verizon.net>
**Sent:** Wednesday, January 24, 2024 8:09 PM
**To:** Paul Mickle <paulmickle@msn.com>
**Subject:** Fw: Food Bank Update

Sent from the all new AOL app for iOS

Begin forwarded message:

On Wednesday, January 24, 2024, 1:55 PM, First Church Media <Info@firstchurchmedia.org> wrote:

Dear Friends,

There has been some recent confusion and concern as to what is going on in the Food Bank and we are writing today to clarify what we can. To make a very long and complex story short, in early December a small group of Food Bank volunteers filed paperwork to make the Food Bank a separate non-profit entity with the intention of running it themselves under the leadership of Paul Mickle. We were not aware of this until a church member saw the notification in the newspaper. While we were not thrilled with the way they went about the process we agreed to meet with these volunteers to discuss the possibility. At the end of the meeting we agreed to consider their proposal but also shared that we would be looking at all possible options. We spent over a month doing research, speaking with church leadership locally and at the conference level and praying about this decision. In the end, it was decided that we would keep the Food Bank as a ministry of First Church and hire a Food Bank Director.

We met with the splinter volunteers and told them about our decision. They were not happy. In the meantime, we had found and hired our new Food Bank Director, Michael Zeltt who is turning out to be a literal Godsend. We planned a meet and greet for Michael and all Food Bank Volunteers for last Saturday. The night before that meet and greet the splinter volunteers sent out an email to many (but not all) volunteers and, we believe, a number of donors stating their case. That letter is pasted below, as well as some points of clarification. The meet and greet was fairly well attended and Michael shared his story with attendees after which he circulated, making it a point to reach out to all guests.

The actions taken by this group has created confusion and frustration for many involved and, most disturbingly, has caused a shortage of volunteers to run distribution. Thus the recent requests for additional volunteers.

**EXHIBIT F (cont.)**

Last night, the group posted some very upsetting material on the Media Food Bank Facebook page (Paul Mickle retains admin rights to the page) which has caused even greater confusion and stands to damage not only their cause but ours. They are now soliciting donations under the name, Media Food Bank, which they can legally do as they own the name. What they are not making clear is that those donations would not come to our Food Bank but to their endeavor. They are also slandering our church with similar accusations to the ones in their email from last weekend. This is obviously very upsetting and could cost us (and perhaps them) donors as it could erode trust in the organization.

So, what are we doing?
- We are working with the conference attorney (and district superintendent) to resolve the impasse
- We have started the process of rebranding our Food Bank with the name Media Food Bank @ First Church (since they are not willing to transfer ownership of the original name to us)
- This will involve a change to the church and Food Bank websites, a new Facebook page, stationery, etc.
- Rev. Brown will be working with the media to share information about the transition and to introduce Michael
- We are reaching out to donors and volunteers to let them know about the transition.

What can you do?
- If you are on Facebook, you can report the page soliciting donations for publishing false information
- You can help spread the word among your friends and community that our Food Bank is in need of volunteers, but is still busily going about its mission to address food insecurity and help those in need
- Pray for a healthy resolution to the situation
- Volunteer!

We hope this information is helpful. If you have any questions please reach out to info@firstchurchmedia.org and we will do our best to provide answers as we are able.

Many blessings!

Robin Beaver, Chair Administrative Council and Staff Pastor Parish Staff Relations Committee
Pete Holston, Treasurer
Reverend Laurie Ann Rookard, Pastor
Harry Shreckengast, Chair of Trustees
Michael Zeltt, Director

IN THE CCIURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CIVIL DIVISION

| | | |
|---|---|---|
| **FIRST UNITED METHODIST CHURCH** | : | |
| **OF MEDIA a/k/a FIRST CHURCH MEDIA** | : | |
| **Plaintiff,** | : | **CIVIL DIVISION** |
| | : | **NO. CV-2024-001795** |
| **vs.** | : | |
| | : | |
| **MEDIA FOOD BANK** | : | |
| **and PAUL MICKLE** | : | |
| **Defendants.** | : | |

## ORDER FOR PRELIMINARY INJUNCTION

**AND NOW**, this 20th day of March, 2024, upon consideration of Plaintiff, First United

Methodist Church, Motion for Emergency Preliminary Injunction and any responses thereto, and

after a hearing on the Motion held in Courtroom 8 on March 15, 2024, at 10:00 a.m., it is hereby

**ORDERED** that the Motion is **GRANTED IN PART**.

**IT IS FURTHER ORDERED:**

1.  Upon finding that Plaintiff has met the burden of showing a likelihood of
    success on the merits, the possibility of irreparable harm should injunction not
    issue, and preliminary injunction is in the public interest, a preliminary
    injunction is granted pursuant to Pennsylvania Rule of Civil Procedure § 1531
    (231 Pa. Code § 1531) and the inherent equitable powers of the Court.

2.  The Court hereby preliminary **ENJOINS** Defendants Paul Mickle and Media
    Food Bank and its agents, employees, officers and representatives, from using
    the name Media Food Bank or holding itself out as Media Food Bank to any
    third party, including but not limited to, donors, volunteers, corporate partners,
    and government agencies, pending resolution of the merits of this case or until
    further order of this Court.

3.  The Court hereby preliminary **ENJOINS** Defendants Paul Mickle and Media
    Food Bank and its agents, employees, officers and representatives from posting
    on the Media Food Bank Facebook page.

4. Defendant, Paul Mickle, shall, no later than March 23, 2024, delete the Media Food Bank Facebook page and provide the access information to the Media Food Bank page to Plaintiff's Counsel, including the admin login and password information.

5. Defendants Paul Mickle and Media Food Bank shall, no later than March 23, 2024, file with the Commonwealth of Pennsylvania and the IRS the appropriate documentation to change the name of the Media Food Bank to a new name.

6. The costs incurred by Plaintiff and Defendant in complying with this Order and for the Preliminary Injunction shall be borne by each party respectively.

7. Plaintiffs shall post a bond or cash equivalent with the Office of Judicial Support in the amount of Five Thousand Dollars ($5,000.00) in accordance with the Pennsylvania Rules of Civil Procedure. (42 Pa. C.S.A. §1531).

8. This preliminary injunction shall take effect immediately and shall remain in effect pending resolution of the merits of this case or until further order of this Court.

BY THE COURT:

J.

**IN THE COURT OF COMMON PLEAS OF PENNSYLVANIA**
**DELAWARE COUNTY**

| | |
|---|---|
| FIRST UNITED METHODIST CHURCH | : |
| OF MEDIA a/k/a FIRST CHURCH MEDIA | : |
| Plaintiff, | : CIVIL DIVISION |
| | : NO. CV-2024-001795 |
| vs. | : |
| | : |
| MEDIA FOOD BANK | : |
| and PAUL MICKLE | : |
| Defendants. | : |

## <u>MOTION FOR RECONSIDERATION OF PRELIMINARY INJUNCTION</u>

Defendant, Media Food Bank and Paul Mickle, by and through undersigned counsel, files this Motion for Reconsideration of Preliminary Injunction requesting that this honorable Court reverse its March 20, 2024, Order for Preliminary Injunction, and declares as follows:

### <u>INTRODUCTION</u>

1. On March 15, 2024, a hearing on the Plaintiff's application for Emergency Injunction was held in Courtroom 8, at the Delaware County Court of Common Pleas.

2. Following testimony and argument of counsel, this Court entered an Order on March 20, 2024, granting the application and Enjoining Paul Mickle from using the name "Media Food Bank," from posting on the "Media Food Bank" Facebook page, directing Paul Mickle to Delete the Facebook page, and to provide Plaintiff with the passwords and administrative login information. *See* March 20, 2024, Order of Judge Whelan.

3. Defendant, Paul Mickle, will suffer irreparable harm and damages if the March 20, 2024, Order is not Stayed pending an appeal because Defendant will lose control, dominion, and access to property that belongs to Defendant, namely the Facebook page.

4. Defendants will suffer irreparable harm and injury that cannot be compensated by monetary renumeration if they are forced to delete an account, they created in 2011, and

1

have had exclusive control and management over, because the account brings Defendant great joy that cannot be replaced with money.

5. Defendant will suffer irreparable harm and injury if they are forced to part with their property because they will not have access to the memories, photos, and posts they have made during the proceeding thirteen (13) years, that are stored digitally on the Facebook page.

6. Defendant will suffer irreparable harm to their identity and confidence if they are forced to delete an account that they have used to communicate with the community that they have served as a volunteer to for the better part of two decades.

7. Defendant will suffer the loss and enjoyment of their first amendment right to free speech if they are forced to delete a Facebook page that allows them to share their ideas and opinions to their community of choice.

8. Defendant will suffer irreparable harm and injury of the loss of companionship and community if they are unable to communicate with the friends they have made over the years who live far away and only communicate with Defendant via the Facebook page.

9. Defendant was not under any employment agreement or contract with First United Methodist Church when they create the Facebook page.

10. First United Methodist Church did not have a social media account policy in place during defendant's brief period of employment.

11. First United Methodist Church, never controlled, directed, or participated in the management and activities of the Facebook page.

12. There will be no confusion in the marketplace if Defendant is allowed to keep the Facebook Page and change the name.

2

13. This issue of control and dominion over social media accounts and the rights to them is a novel one and given the uncharted territory this Court should reverse the Order until the Commonwealth has had an opportunity to set a path.

14. Defendant will suffer greater injury if the Injunction is not stayed, as Plaintiff, has already created a new Facebook Account, and Defendant has not.

15. The Injunction Order is overly broad and not narrowly tailored or connected to the harm that it seeks to prevent, as any confusion in the marketplace can be corrected with a name change.

16. Plaintiff has not provided evidence, established, or even alleged that they own the Facebook page at issue.

## <u>PRAYER FOR RELIEF</u>

Wherefore, Defendant respectfully requests pursuant to Pa. R.C.P. 1930.2., Motions for Reconsideration,  This Court reconsider and vacate its March 20, 2024, Order and allow plaintiff to keep the Facebook page.

## MEMORANDUM OF LAW

**Question:** Should this Court modify and revise the Preliminary Injunction because Client has not established a right to relief?

**Suggested Answer:** Yes, This Court should reverse the grant of Preliminary Injunction because Ownership of the Facebook page is not an underlying claim in Plaintiff's complaint.


    Under Pennsylvania Appellate Procedure prior to application for a stay of a trial court order Petitioner must make a showing that they have made the request of the trial court in the first instance. Pa. R.A.P. 1732(a), Thus Defendant hereby requests that the Court reverse its Preliminary Injunction as Defendant has a good faith belief that a reverse of the Order is supported by fact and law.

    Plaintiff has failed to carry their heavy burden of persuasion for preliminary injunction, and they have failed to establish the six prerequisites necessary for the issuance of an injunction. Specifically, Plaintiff has failed to establish that they are likely to prevail on the merits any claim that the Facebook page belongs to them because they provided no evidence or argument about ownership and control of the Facebook page at issue during the six-hour hearing on March 15, 2024, and ownership of the page is not a claim of their underlying Complaint.

    Plaintiff is not entitled to ownership and control of the Facebook page, and Plaintiff cannot demonstrate that they are likely to prove successful on the merits of any such claim because they have not put forth a claim for ownership of the Facebook Page as one of their causes of actions in their underlying Complaint. Plaintiff claims in their underlying lawsuit are for: Unfair Competition, Tortious/Intentional Interference with Contractual Relations, Aiding

4

and Abetting Breach of Fiduciary Duty, and Civil Conspiracy. Plaintiff cannot prove successful on a claim of ownership of the Facebook page because the claim is not at issue and not present in their Complaint, thus an impossibility.

Defendant concedes that the Church has housed and operated a food bank since 1995, but any such activity is distinct and different than ownership of the Facebook page, and Plaintiff does not claim and has not established that the Facebook page at issue was created for Plaintiff, at Plaintiff's direction, and was intended to be owned by Plaintiff.

Alternatively, as recently described in our sister Circuit, the ownership and control of social media accounts made by a former employee (volunteer in the instance case) is a novel issue and one Counsel believes is of first impression in the Commonwealth and this Circuit, as such, at the bare minimum, a stay pending an appeal is warranted.[1]

## PLAINTIFF DOES NOT OWN THE FACEBOOK PAGE

**I**

Plaintiff is not entitled to ownership and control of the Facebook page, and Plaintiff cannot demonstrate that they are likely to prove successful on the merits of any such claim because they have not put forth a claim for ownership of the Facebook Page as one of their causes of actions of their underlying Complaint. Plaintiff's claims in their underlying lawsuit are for: Unfair Competition, Tortious/Intentional Interference with Contractual Relations, Aiding and Abetting Breach of Fiduciary Duty, and Civil Conspiracy. Plaintiff cannot evidence a likelihood of success on a claim of conversion of the Facebook page because the claim is not at issue and not presented in their Complaint, thus a factual impossibility that they own the page.

---

[1] JLM Couture, Inc. v. Gutman, 91 F.4th 91, 105 (2d Cir. 2024), wherein the Second Circuit overturned the District Court's Preliminary Injunction directing control of various social media accounts be provided to a former employer.

Plaintiff may attempt to shoehorn their Tortious Interference with Contractual Relations claim as the cause of action wherein they allege ownership of the Facebook Page at issue, however, that would prove fatal because they have failed to introduce or evidence any contract that they have with Facebook, and further, have failed to allege any such material fact. Pennsylvania following the Restatement (Second) of Torts §766, define the tort of intentional interference with existing contractual relations as: One who improperly interferes with an existing contractual relationship with...a third party by inducing or otherwise causing the third person not to perform the contract. <u>Adler Barish, Daniels, Levin and Creskoff v. Epstein</u>, 393 A.2d 1175, 1183 (Pa. 1978).

The threshold requirement for any such claim is that a contract existed between the parties. <u>Binns v. Flaster Greenberg, P.C.</u>, 480 F. Supp. 2d 773 (E.D. Pa. 2007). Then, the analysis shifts to reviewing any "improper inducement of a third party not to perform" <u>Id.</u> at 778. The analysis for inducement is directed at conduct and in the instance case, would examine the conduct of Defendant as it relates to any contractual agreements that Plaintiff has.

Here, Plaintiff has not established or even alleged the existence of any contractual relationship between First United Methodist Church and Facebook as it pertains to the Media Food Bank Facebook Page. Plaintiff has not established or even alleged any express contract or implied contract between Defendant and Plaintiff with respect to the Media Food Bank Facebook page. Conclusively, Plaintiff cannot establish the threshold issue, the existence of a contract, to even attempt to apply their claim of Tortious Interference to ownership of the Facebook Page at issue.

**II**

Plaintiff is not likely to succeed on its unfair competition claim because Defendant is not

engaged in any business activity and has not competed with Plaintiff. Defendant merely began

the process to launch his own Food Bank, and charitable endeavors but Defendant has not is not

in active competition with Plaintiff.

Defendant established a nonprofit enterprise, Defendant has not and does not seek any

personal gain or riches from their endeavor, Defendant only seeks to help feed the folks in Media

through organizing volunteers, requesting free food and donations from surrounding businesses

and receiving donations from charitable individuals. Plaintiff's underlying suit alleges, as a

claim, unfair competition, followed to its logical end, Plaintiff is accusing Defendant of unfairly

competing to give away free food and services to less fortunate folks in the community, not only

a ludicrous proposition, but a legally insufficient one, as it would require Plaintiff to prove that

Defendant took overt actions to compete with Plaintiff, and as matters stand Defendant has not

taken any direct action to compete or interfere with Plaintiff's business operations.

To plead a claim for unfair competition under Pennsylvania common law, "a [complaint]

must allege that [the plaintiff] is in competition with the defendant—that is, that the plaintiff and

the defendant 'supply similar goods or services." Am. Bd. of Internal Med. v. Von Muller, Civ.

A. No. 10-2680, 2011 WL 857337, at *11 (E.D. Pa. Mar. 10, 2011) (quoting Giordano v.

Claudio, 714 F. Supp. 2d 508, 523 (E.D. Pa. 2010)), aff'd, 540 F. App'x 103 (3d Cir. 2013).

Here, Plaintiff has not demonstrated a likeliness of success on this issue during the

hearing because they cannot, Defendant, has not competed with Defendant, and is not an active

competitor to Plaintiff. Defendant, has prepared to continue his charitable works, but has not

done so. Out of an abundance of caution Defendant has paused and ceased operations, while

laying the foundation to begin once the dark cloud of litigation and threats from Plaintiff cease.

## **DEFENDANT HAS INTANGIBLE RIGHTS IN THE FACEBOOK PAGE**

Defendant owed no contractual duty or obligation to Plaintiff when he created the Facebook page, additionally, Plaintiff did not direct Defendant to create, maintain, or administer the Media Food Bank Facebook Page, thus they have no claim, and make no claim, to the Page.

The Pennsylvania courts have not recognized a claim for conversion based on intangible property rights in a publication, although they have not expressly foreclosed such a claim. Northcraft v. Edward C. Michener Assocs., Inc., 466 A.2d 620, 625 (Pa.Super.Ct.1983). The Superior Court identified that the process of expansion, of the tort of conversion has stopped with the kind of intangible rights which are customarily merged in or identified with some document. Id. at 625.

Here, Defendant created the Facebook page at issue in 2011, Defendant used his own personal email and information to login to the Facebook page, and at no point did First United Methodist Church ever have administrative control or dominion of the Facebook page. Defendant created the page of his own violation and pursuant to his own whims. Defendant has for the last eleven (11) years been the exclusive administrator and owner of the account, as he was the person who entered into a contract with Facebook when he created the account, as an individual and not as a representative of First Untied Methodist Church. Plaintiff has not sufficiently alleged or state a claim for merger, or ownership of the Facebook account at issue.

Lastly, Plaintiff has not provided any evidence to the effect that they have exhausted non-judicial remedies. Plaintiff has not alleged or provided any evidence that they have contacted Facebook and attempted to establish that their organization is the correct owner of the Facebook Page. Additionally, Defendant objects to be required by the state to give away  his property,

namely, the credentials and password that he created as the login requirements of the page.

## <u>CONCLUSION</u>

Therefore, Plaintiff has failed to meet his burden during the preliminary hearing because the concept of ownership over a social media account was not raised in the Complaint, nor was the issue raised during the hearing and because the issue is a novel one in this jurisdiction. Moreover, Paul Mickle will be irreparably harmed if he is forced by the State to give up his Facebook account, the login information and password that is his personal intellectual property, And because Plaintiff has not contacted Facebook and attempted to establish ownership of the account  through non-judicial channels, this Court Should reverse its grant of injunction.


By:   /s/ *Andre R. Desir*
         Andre R. Desir, Esquire
         Counsel for Media Food Bank and Paul Mickel
         Adesir@trustandwill.com
         7 Dowlin Forge Road
         Exton, PA 19341

Dated: March 21, 2024

## <u>VERIFICATION</u>

I Paul Mickle, hereby swear, deposes, and says that I am the Defendant and managing member of Media Food Bank, a nonprofit corporation, in the above captioned case, and I have authorized the filing of this pleading. I have reviewed the allegations made in the foregoing, and to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on my recollection and understanding of events such that I believe them to be true.

/S/ *PAUL MICKLE*_____

Paul Mickle

Managing Member, and Director of
Media Food Bank, a nonprofit corporation

581 Farnum Road

Media Pa, 19063

**DATED:  MARCH /21/2024**

## **CERTIFICATE OF SERVICE**

I, Andre R. Desir, Esquire, hereby certify that I caused a true and correct copy of the foregoing to be served via this Court's electronic filing system upon all counsel of record and that I mailed, on this day, a copy of the foregoing, first class mail, to Counsel of record at:

Darryl W. Shorter, Esq

C/O Keller, Lisgar, & Williams LLP

101 E. Darby Road

Havertown, PA 19083

By:   /s/ *Andre R. Desir*
          Andre R. Desir, Esquire
          Counsel for Media Food Bank and Paul Mickel
          Adesir@trustandwill.com
          7 Dowlin Forge Road
          Exton, PA 19341

Dated: March 21, 2024